KELSO & COMPANY, Respondent, *v.* CHARLES H. ELLIS, SR., et al., Copartners under the Firm Name of CHAS. H. ELLIS & SON, Appellants.

Bills, notes and checks — promissory note given for purchase money on executory contract — when benefits of partial performance may be retained — transfer by indorsement of negotiable paper merely as payment of antecedent debt is transfer for value — fact not conclusive as to bona fides of transaction — question for jury — when partial failure of consideration absolute defense.

1. A party may retain, without compensation, the benefits of a partial performance, where, from the nature of the contract, he must receive such benefits in advance of a full performance, and by its

terms or just construction is under no obligation to pay until the performance is complete.

2. Where a promissory note is given for the purchase money on an executory contract for the sale of lands or chattels, the law is the same as obtains in a case where the only promise to pay is found in the contract of sale itself, provided the action is between the original parties.

3. The Negotiable Instruments Law (Cons. L. ch. 38, § 51) provides that " an antecedent or pre-existing debt constitutes value." For the sake of uniformity New York has abrogated the contrary rule which had been in force since the year 1822, and thus brings the law of this state into harmony with that of the United States Supreme Court. (*Coddington* v. *Bay*, 20 Johns. 637, overruled; *Swift* v. *Tyson*, 16 Pet. 1, followed.)

4. While it is ordinarily said that the payment of value for negotiable paper is a circumstance to be taken into account with other facts in determining the question of the *bona fides* of the transaction, and that when full value is paid that circumstance is entitled to great weight, the fact is not conclusive, particularly when it appears that the value given was merely credit on an old debt.

5. In this action to recover upon certain promissory notes transferred to plaintiff by the payee before maturity the consideration for the notes was a piano and incidentals to be used in a voting contest by the defendant. Plaintiff furnished pianos to merchants on the order of the payee for such contests. It knew that it had refused to ship a piano to defendant on payee's order when it took the notes and gave payee credit therefor on his general account. The circumstances would sustain a finding that by the simple test of honesty and good faith it became the duty of plaintiff to inquire as to the real situation between the payee of the notes in question and the defendants, and to ascertain whether the payee had broken his contract to furnish a piano to defendants. The question whether plaintiff was a *bona fide* purchaser was one of fact for the jury, and it was error to strike out evidence of the dealings between the payee and plaintiff and defendants and to direct a verdict for plaintiff.

6. Partial failure of consideration is not a defense *pro tanto* under section 54 of the Negotiable Instruments Law when the contract is entire and it is impossible to determine the price for which each article was sold.

*Kelso & Co.* v. *Ellis*, 171 App. Div. 912, reversed.

(Argued November 18, 1918; decided December 3, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 20, 1915, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Anthony J. Ernest* and *Charles F. Dalton* for appellants. The plaintiff is not a *bona fide* purchaser or holder in due course. (*Cheever Case*, 150 N. Y. 67; *Citizens Bank* v. *Rung F. Co.*, 76 App. Div. 474; *Rochester Co.* v. *Paviour*, 164 N. Y. 286; *Burdick* v. *Freeman*, 120 N. Y. 424.) The plaintiff did not part with any valuable consideration for the notes. The trial court erroneously excluded the testimony as to this matter. (*Peterson* v. *Fowler*, 162 App. Div. 24; *Dibble* v. *Richardson*, 171 N. Y. 138; *Larbig* v. *Peck*, 69 App. Div. 175; 174 N. Y. 513; *Roseman* v. *Mahoney*, 86 App. Div. 378; *Central Trust Co.* v. *W. I. Imp. Co.*, 169 N. Y. 326; *Carpenter* v. *Hoadley*, 138 App. Div. 190; 203 N. Y. 571; *Cons. N. Bank* v. *Kirkland*, 99 App. Div. 121; *Spring Brook Chem. Co.* v. *Dunn*, 39 App. Div. 131; *Bank of America* v. *Waydell*, 187 N. Y. 110; *Fuller Buggy Co.* v. *Waldron*, 112 App. Div. 814; 188 N. Y. 630; *Perth Amboy M. L. Assn.* v. *Chapman*, 80 App. Div. 560, 564; 178 N. Y. 558; *Mer. St. Bank* v. *Santa Maria Co.*, 162 App. Div. 248.) The direction of a verdict was erroneous because the questions of fact should have been submitted to the jury. (*Sabine* v. *Paine*, 223 N. Y. 401; *Zeller* v. *Leiter*, 189 N. Y. 361; *Schneider* v. *Klar*, 26 Misc. Rep. 767; *Ming* v. *Corbin*, 142 N. Y. 342; *Glen* v. *Rossler*, 156 N. Y. 167; *Ewing* v. *Wightman*, 167 N. Y. 110; *Citizens' Bank* v. *Cowels*, 180 N. Y. 349; *Scott* v. *Scott*, 2 App. Div. 240; *Brown* v. *Willis*, 13 Ohio, 26; *Davis* v. *McCready*, 17 N. Y. 230; *Tradesmen's Bank* v. *Curtis*, 167 N. Y. 194.)

*Otto C. Sommerich* and *Maxwell C. Katz* for respondent. Defendants having admitted the receipt of the advertising literature, the silverware and the bond, and the carrying on of the contest pursuant to the instructions of the plaintiffs' indorser and payee, and the non-offer to return of the aforementioned benefits, and the continuance of the contract after the claim of a breach thereof, and the defendants having set up total failure of consideration, and having attempted to prove merely a partial failure of consideration, the verdict was properly directed. (*Thompson* v. *Halbert*, 109 N. Y. 329; *Levitt* v. *O'Rourke Engineering Co.*, 160 App. Div. 869; *Union Foundry* v. *N. Y. L. D. Co.*, 13 N. Y. S. R. 701; *Norton* v. *Dreyfuss*, 106 N. Y. 90; *Grant* v. *Pratt & Lambert*, 52 App. Div. 540; *Sawyer* v. *Chambers*, 44 Barb. 42; *Fisher* v. *Sharpe*, 5 Daly, 214; *Coplay Iron Co.* v. *Pope*, 108 N. Y. 232; *Springer* v. *Dwyer*, 50 N. Y. 19.) Plaintiff having applied these notes with others as so much cash to the account of Howard, the payee, and having at the time of thus crediting Howard no knowledge that these particular notes were given partly for a piano which the plaintiff had agreed with Howard to deliver to his customer, and the plaintiff's practice being to treat Howard's customers' notes as cash, irrespective of whether the notes were given partly for the delivery of plaintiff's pianos or not, plaintiff is a holder in due course. (*Cheever* v. *Pittsburgh Ry. Co.*, 150 N. Y. 59; *Oliner* v. *Gronich*, 168 App. Div. 874; *Davis* v. *McCready*, 17 N. Y. 230; *Tradesmen's Nat. Bank* v. *Curtis*, 167 N. Y. 194; *Newsam* v. *Finch*, 25 Barb. 175; *Clark* v. *West*, 137 App. Div. 23; 201 N. Y. 569; *Mickles* v. *Colvin*, 4 Barb. 305; *Winchell* v. *Hicks*, 18 N. Y. 558; *Van Aernam* v. *Bleistein*, 102 N. Y. 355; *Muller* v. *McKesson*, 73 N. Y. 195; *Mechanics & Traders National Bank* v. *Crow*, 60 N. Y. 85; *Mitchell* v. *Baldwin*, 88 App. Div. 265.) The indebtedness of Howard of $2,308 and the taking of these notes in lieu of cash, and

applying them to Howard's account as additional collateral constituted the plaintiff a holder for value. (*King* v. *Bowling Green Trust Co.*, 145 App. Div. 398; *Maurice* v. *Fowler*, 78 Misc. Rep. 357; *Hall Co.* v. *Todd*, 139 N. Y. Supp. 111; *Lehrenkrauss* v. *Bonnell*, 199 N. Y. 240; *Millins* v. *Kauffmann*, 104 App. Div. 442; *Brewster* v. *Shrader*, 26 Misc. Rep. 480; *Matter of Hopper-Morgan*, 154 Fed. Rep. 249; *Bruner* v. *New Universal Fertilizer Co.*, 218 Mass. 300; *Lowell* v. *Pickford*, 201 Mass. 543; *Voss* v. *Chamberlain*, 139 Iowa, 569; *Graham* v. *Smith*, 155 Mich. 65; *Elk Valley Coal Co.* v. *Third Nat. Bank*, 157 Ky. 617.)

POUND, J. Thomas Howard, under the name of Thomas Howard Company, dealt in advertising specialties in Brooklyn, N. Y. He had a plan for a piano contest whereby a merchant would offer a piano to be voted for by his customers and given to the contestant receiving the highest number of votes, the right to vote being dependent upon the purchases made at the store where the contest was being conducted, during a given period. The idea was so to stimulate trade beyond its usual activity as to enhance the sales of the merchant and thus put money in his purse. Careful and voluminous instructions for arousing public interest in the contest were an essential part of the plan. Other prizes were offered to contestants, but the interest centered around the piano. Howard did not deal in pianos himself, but when he obtained a customer for his scheme he placed an order with a manufacturer for a piano to be shipped to such customer. The plaintiff herein was a piano manufacturer. The defendants were merchants in Port Chester, N. Y. On October 24, 1913, they entered into a contract with Howard for the delivery at his earliest convenience of one T. Howard Co. $750.00 player-piano, mahogany finished, warranted and guaranteed for 10 years; five

$500.00 certificates good on a T. Howard Co. $750.00 piano, mahogany finished, warranted and guaranteed for 10 years; 20 dozens assorted pieces of flat silverware, permanently warranted. To be distributed by defendants the following: 200 nomination letters, 500 follow up letters, 1,500 circulars, 1,000 postal cards, 40 posters, 50 bulletins, 150–$1.00, 100–$2.00 and 300–$5.00 trading books, 1 voting register, 1 Howard Co.'s instruction book, 2 sets of " Display Card " signs, instructions for newspaper advertising, to be done without expense to vendor, 54,000 certificates in four colors for piano votes in denominations of 5 to 25,000 votes; all the foregoing to be used in a piano advertising contest to open November 3, 1913, and close May 3, 1914.

In consideration therefor they gave their six negotiable promissory notes payable to Howard and due two, three, four, five, six and seven months after date, aggregating $650.00. The defendants agreed to " keep the Piano well displayed in my store," and it is a fair inference that it was the intention of the parties that the piano should be delivered for that purpose before the opening of the contest on November 3, 1913.

On December 4, 1913, Howard sent an order to plaintiff to deliver a player-piano *at once* to the defendants. He had previously delivered to them some of the silverware and all of the printed matter which they made use of in a voting contest. But the contest without a piano was like the play of Hamlet with the part of Hamlet left out. Plaintiff had sold pianos to Howard for over two years and had shipped many pianos to merchants for him, and had received from him notes of merchants to whom it had shipped pianos on his order. He had previously told it that he had an advertising plan; that he was supplying merchants with pianos all over the country and he had thus obtained from it a line of credit.

It stenciled the name "T. Howard Company" on such pianos. But plaintiff did not ship the piano to defendants. Howard owed it upwards of $2,000 for pianos actually shipped and further credit was refused. On December 22, 1913, prior to the maturity of the first note in suit, Howard transferred the Ellis notes to it and it gave him credit therefor on his general account as cash, knowing at the time that no piano had been delivered by it to defendants. It does not appear that plaintiff then had actual knowledge of the terms of the contract between Howard and defendants.

This action is brought to recover on the notes. The answer sets up many defenses and a counterclaim, none of which are substantial except the defense that the plaintiff was not a holder in due course; that it did not take the notes in good faith and did not take them for value. This defense calls for careful examination.

In the hands of Howard, the notes were subject to the defense that the contract was entire; that there had been no full performance by Howard and that there was no obligation to pay until performance was complete. Defendants were constantly demanding performance by Howard on his contract to furnish the piano, and it cannot be said as matter of law that there was waiver on their part of this condition of the contract. They, therefore, did not become liable to pay for or return even the articles received in part performance. "A party may retain, without compensation, the benefits of a partial performance, where, from the nature of the contract, he must receive such benefits in advance of a full performance, and by its terms or just construction is under no obligation to pay until the performance is complete." (*Avery* v. *Willson*, 81 N. Y. 341, 344.) The agreement to deliver the piano and the other articles and the agreement to pay the notes, being concurrent

in time, were dependent and Howard could not maintain an action against defendants without tendering full performance on his part. Where a promissory note is given for the purchase money on an executory contract for the sale of lands or chattels, the law is the same as obtains in a case where the only promise to pay is found in the contract of sale itself, provided the action is between the original parties. (*Ewing* v. *Wightman*, 167 N. Y. 107.)

Was plaintiff chargeable with knowledge of such facts that its action in taking the instruments might be found by a jury to amount to bad faith? (Neg. Inst. Law [Cons. Laws, ch. 38], § 95.) If it did not act in good faith, the notes were subject to the equities between the original parties. (*Canajoharie National Bank* v. *Diefendorf*, 123 N. Y. 191.) The relation between Howard's order for the piano to be shipped by the plaintiff to defendants, and the notes of defendants payable to his order, would, we think, under the circumstances, sustain a finding that "by the simple test of honesty and good faith" (*Magee* v. *Badger*, 34 N. Y. 247, 249) it became the duty of plaintiff to inquire as to the real situation between Howard and the defendants. "It would be no defense to these acceptances that they were given upon an executory contract for the sale of merchandise, even if the plaintiff knew that an agreement existed between the makers and the acceptors that the drafts were not to be in force until the merchandise was delivered, *unless the acceptances were discounted with knowledge of the breach.*" (*Tradesmen's National Bank* v. *Curtis*, 167 N. Y. 195, 198.) Could the inference fairly be drawn that plaintiff's manager should have had knowledge on December 22 that there had been a breach on the part of Howard of his promise to deliver a piano prior to that time to the defendants? The notes were dated October 24; the letter of December 3 directs plaintiff to deliver a piano

to defendants *at once*. The plaintiff itself prevented the performance of the contract between Howard and the defendants by refusing to give Howard any further credit and by taking the defendants' notes and placing them to the credit of Howard's antecedent indebtedness. The situation, as it now appears, fairly suggests a determination on the part of plaintiff to enforce the obligations of the defendants without shipping the piano coupled with indifference, at least, as to whether Howard had agreed to deliver the piano at an earlier date. More than a suspicion may have existed on its part that to enforce the notes would be to compel defendants to pay for something to which they were entitled and which they had not received because Howard had broken his contract with them.

Unquestionably, upon the evidence, plaintiff was a holder for value. Prior to the passage of the Negotiable Instruments Law, and from the time of the decision of *Coddington* v. *Bay* (20 Johns. 637) it was the law of this state that in order to constitute one a holder for value as indorsee of negotiable paper, it was necessary that he should part with some present consideration and that mere credit given on an antecedent debt was not such a consideration; but the Negotiable Instruments Law (§ 51) provides that " an antecedent or pre-existing debt constitutes value " and thus brings the law of this state into harmony with that of the United States Supreme Court. *Swift* v. *Tyson* (16 Peters, 1) held that the transfer of negotiable paper by indorsement to a creditor before maturity, merely as security for an antecedent debt or in payment thereof, is a transfer for value. The conflicting doctrines of the two leading cases were for many years the subject of earnest discussion in the courts and the lack of a uniform rule on the subject caused no little confusion. The New York rule was so well established that the inertia of *Coddington* v. *Bay*

carried it along for some distance before the external force of the Negotiable Instruments Law acted upon it. (*Sutherland* v. *Mead*, 80 App. Div. 103, 107; *Roseman* v. *Mahony*, 86 App. Div. 377, 378; Crawford's Annotated Neg. Inst. Law, p. 63.) Even in this court a dictum in *Bank of America* v. *Waydell* (187 N. Y. 115, 120) reveals the habit of bench and bar to look to cases rather than statutes for principles of commercial law until attention is sharply directed to the extent that the movement for uniformity of laws through legislation has been successful in New York and many other states. But it is perfectly clear that for the sake of uniformity New York has abrogated the rule which had been in force since the year 1822. (*Melton* v. *Pensacola Bank & Trust Co.*, 190 Fed. Rep. 126, 132.) *Coddington* v. *Bay* and section 51 of the Negotiable Instruments Law are irreconcilable in the mind of any candid student of the decisions in this and other jurisdictions.

While it is ordinarily said that the payment of value for negotiable paper is a circumstance to be taken into account with other facts in determining the question of the *bona fides* of the transaction, and that when full value is paid that circumstance is entitled to great weight (*Canajoharie National Bank* v. *Diefendorf, supra*) the fact is not conclusive, particularly when it appears that, as in this case, the value given was merely credit on the old debt.

The question as to whether the plaintiff was a *bona fide* purchaser was one of fact for the jury, and the court erred in striking out the evidence of the dealings between Howard and the plaintiff and the defendants and directing a verdict for the plaintiff. The learned trial justice thus disposed of the case upon the ground that " the defenses here pleaded are pleaded as complete defenses, and that, therefore, the testimony does not constitute a defense." But, as we have seen, no recovery on any doctrine of *quan-*

*tum meruit* could be had. The Negotiable Instruments Law (§ 54) provides that "partial failure of consideration is a defense *pro tanto.*" By way of illustration, if the notes had been given for several different articles, bought for different prices but at the same time, under circumstances implying a separate contract for each article sold, the failure to deliver one of the articles might limit the. buyer to a partial defense to an action on the notes, but as in the case at bar one consideration was paid for all the articles sold, it is not possible to determine the amount paid for each and the contract is entire.

The judgment should be reversed and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., COLLIN, CUDDEBACK, CARDOZO and ANDREWS, JJ., concur; CRANE, J., dissents on the ground that the evidence would not sustain a finding that plaintiff was not a *bona fide* holder for value.

Judgment reversed, etc.