The Merchants National Bank of Plattsburgh, N. Y., Plaintiff, *v.* Home Deposit Company of America, Incorporated, and Others, Defendants.

Supreme Court, Clinton County, November 26, 1926.

Bills and notes — holder in due course — plaintiff discounted note on which defendant was accommodation indorser and applied proceeds thereof on notes held by it against corporate indorser but signed by president thereof individually — bank applied proceeds on president's overdue notes — bank was holder in due course under Negotiable Instruments Law, § 51 — parol evidence is admissible to show loans on notes signed by president of corporation were made to corporation.

Plaintiff bank is a holder in due course of a promissory note, indorsed by the defendant corporation and by the individual defendant for accommodation, where it appears that it discounted the note for said corporation and applied the proceeds thereof on said corporation's past due notes, which had been executed individually by the president thereof, who was also its principal stockholder.

A bank which applies the proceeds of a note in payment of an indorser's overdue notes is a holder in due course under section 51 of the Negotiable Instruments Law.

Parol evidence, showing that the loans which plaintiff made, though carried in the name of the president of the corporation, were actually made to the corporation and for its benefit, was admissible, and it was proper for the bank to establish the liability of the accommodation indorser by such parol testimony.

Action on a promissory note.

*Feinberg & Jerry*, for the plaintiff.

*Lippman & Sachs*, for the defendant Treister.

Heffernan, J. This is an action on a promissory note. On October 20, 1925, the defendant Home Deposit Company of America, Incorporated, made its note in the sum of $5,000, payable sixty days after date, to the order of the defendant Maurice Schiff, Inc. The note bears the indorsement of that defendant and also the indorsement of the defendant Isaac B. Treister. It is conceded that the latter was an accommodation indorser. On October 23, 1925, Maurice Schiff, the president and treasurer of the defendant Maurice Schiff, Inc., presented this note for discount to the plaintiff. At that time he informed plaintiff's cashier that the note in question represented the purchase price of corporate stock of the defendant Maurice Schiff, Inc., by the defendant Treister. Thereupon plaintiff discounted the note and credited the proceeds thereof against a past due indebtedness represented by notes totalling $20,300, which notes were executed in the name of Maurice Schiff individually. Subsequent to the maturity of this note, and

about December 28, 1925, Schiff presented to the bank a note for a like amount in renewal of the protested item bearing the indorsement of the defendant Treister. The bank declined to accept it and thereupon this action was brought. The defendant Treister only has answered and he contends that as to him the plaintiff is not a holder in due course and for value.

To determine the issue, it is important to understand the nature of the previous dealings of these parties. Prior to April, 1920, a copartnership consisting of Schiff & Haley, of which Maurice Schiff was one of the members, had been engaged in the dry goods business in the city of Plattsburgh for a number of years. In April, 1920, the defendant Maurice Schiff, Inc., was chartered under the laws of this State with a capital stock of $40,000, and immediately upon its creation the copartnership business was transferred to it and thereafter conducted until February, 1926, when the corporation was adjudicated a bankrupt. In 1925 the capital stock was increased to $75,000. Maurice Schiff was not only the president and treasurer of the concern but was the person actively in charge of its affairs. He, and the members of his immediate family, at all times held the controlling interest in the company. From the time of the formation of the corporation bearing his name, Maurice Schiff had no personal account with the plaintiff; in fact, he had no business aside from his connection with the corporation. In the business transactions between the plaintiff and the corporation, the names Maurice Schiff and Maurice Schiff, Inc., were used indiscriminately. Schiff acquainted the plaintiff with the incorporation of his company and told plaintiff's cashier that the business was transacted under both names, and from the testimony it conclusively appears that these names were convertible terms and used interchangeably. The defendant Treister was fully acquainted with this fact. For many years the Wells-Treister Co., Inc., a New York corporation extensively engaged in the sale of furs, of which he was an active member, had business relations with the firm of Schiff & Haley and upon the dissolution of that concern and the formation of the corporation organized to take over its affairs, there was a resumption of that relationship and it was continued to the time of the execution and delivery of the note in question. In the course of dealing it invoiced merchandise intended for the corporation to Maurice Schiff, individually, and Maurice Schiff, Inc. Credit memoranda were issued in the same manner and apparently no distinction was made as to which name was used. Not only was the information which his corporation had as to the interchangeability of these names brought home to him in his business dealings but I am clearly satisfied that he had

personal knowledge that the Schiff corporation was trading with the public generally under both designations. His statement now that he did not know what was then perfectly obvious is a mere pretext born of the hope to thus escape liability. For many years it had been his custom to visit the Schiff store at Plattsburgh annually.

The moneys which Schiff borrowed from the plaintiff bank aggregating $20,300 were obtained, not for his own personal account, but for the use of the corporation which he represented. The corporation paid the interest on these obligations and in the statements which it issued they were listed as corporate liabilities. The avails of the discounts of these notes were used solely for the payment of the corporate obligations and were checked against, not by the personal checks of Schiff, but those of the company. While it is true that the notes which the bank held bore the signature of Schiff individually, it is apparent that they were not his personal obligations, but solely the obligations of the corporation. The name Maurice Schiff was adopted and used by the corporation as a substitute for the corporate name, and, as I view it, the adopted name for all purposes here is the legal equivalent of the actual name. It appears conclusively that the loans which the plaintiff made, although carried in the name of Schiff, were actually made, not to him, but to the corporation and for its benefit, and it is entirely competent to establish this by parol testimony. The attempted distinction which the defendant seeks to make between the names of Maurice Schiff and Maurice Schiff, Inc., is not tenable since it clearly appears that the loans which the bank made were not to the individual but to the corporate entity.

That the plaintiff is a holder in due course can hardly be open to serious question. The proceeds of the notes sued on were applied by the plaintiff in part payment of the overdue indebtedness which it held, and it is, therefore, a holder for value. An antecedent or pre-existing debt constitutes value. (Neg. Inst. Law, § 51.) For a number of years it was the law of this State that in order to constitute one a holder for value as indorsee of negotiable paper, it was necessary that he should part with some present consideration, and that credit given on an antecedent debt was not sufficient. (*Coddington* v. *Bay*, 20 Johns. 637.) This doctrine was abrogated by the passage of the Negotiable Instruments Law, although apparently this was not recognized for some time, and the rule which now obtains in this State is in harmony with that announced by the United States Supreme Court in *Swift* v. *Tyson* (16 Pet. 1), where it was held that the transfer of negotiable paper by indorsement to a creditor before maturity, merely as security for an ante-

cedent debt or in payment thereof, is a transfer for value. (*Kelso & Co.* v. *Ellis,* 224 N. Y. 528.)

For these reasons I am convinced that the plaintiff is entitled to judgment for the amount claimed in its complaint together with its costs and disbursements.

Findings may be presented in accordance with these views.