## HAMMETT v. WARNER BROTHERS PICTURES, Inc.

### No. 253, Docket 21298.

United States Court of Appeals Second Circuit.

Argued May 10, 1949.

Decided June 24, 1949.

CLARK, Circuit Judge, dissenting.

———◆———

Zissu & Marcus, New York City (Leonard Zissu, Abraham Marcus, Alan J. Stein, New York City, of counsel), for plaintiff.

R. W. Perkins, New York City (Morris Ebenstein, Joseph D. Karp, Theodore R. Kupferman; Harry R. Olsson, Jr., Brooklyn, N. Y., of counsel), for defendant.

Before CHASE, CLARK, and DOBIE, Circuit Judges.

CHASE, Circuit Judge.

Appellant, Dashiell Hammett, is the author of a detective story called "The Maltese Falcon." This story was first published serially in a magazine during 1929 and 1930, the installments being copyrighted as published by the Pro-Distributors Corporation. In 1930 the registered copyrights were conveyed by it to Alfred A. Knopf, Inc., which published the installments and revisions of them in a book, registering a copyright thereof. On June 23, 1930, Hammett and Knopf joined as "owners" in a contract conveying to Warner Bros. Pictures, Inc., extensive rights in the copyrighted material, including exclusive motion picture and radio rights in the published works and in any future arrangements or revisions of them and the exclusive rights to use of the title or titles of the works copyrighted in motion pictures. The contract gave to the assignee the right to "adapt, use, dramatize, arrange, change, transpose, make musical versions of, add to, interpolate in and subtract from such writings the language, title and dialogue thereof. * * *" Three motion pictures were made by appellee, hereinafter called "Warner," based on the copyrighted material and were themselves copyrighted; the last of them, made in 1941 under the title "The Maltese Falcon," was very successful commercially.

The principal character of "The Maltese Falcon" in both the published and the motion picture versions thus far produced is a private detective, "Sam Spade." Since the publication of "The Maltese Falcon," Hammett has written other stories in which "Sam Spade" has been the principal character and these stories have been collected and published under the title, "The Adventures of Sam Spade and other stories by Dashiell Hammett."

On May 15, 1946, Hammett assigned to other parties the exclusive right to the use in radio, television, motion pictures and other media of the name "Sam Spade" and the title, "The Adventures of Sam Spade" in connection with original material to be written by others. Subsequently, since about July, 1946, these assignees and their successors have produced a weekly radio show called "Adventures of Sam Spade," the principal character of which has been named and modeled after Hammett's detective.

On January 29, 1948, Warner wrote a letter through its attorney to the Columbia Broadcasting System in which it complained of plagiarism of its and Knopf's copyrights by the broadcast of a drama, "The Kandy Tooth," and also said, "Furthermore, it has come to our attention that in violation of our rights you are using the

character Sam Spade, who is derived from The Maltese Falcon, in a series of broadcasts over your network, and are actually using the name Sam Spade in the titles of these broadcasts." On May 13, 1948, it wrote to Hammett's assignees' successor, Regis Radio Corporation, saying, "The character and name of Sam Spade are an integral part of this valuable literary property [The Maltese Falcon] * * *. It appears to us that your program, "The Adventures of Sam Spade," is an infringement of the rights of our client in this literary property. * * * Demand is hereby made upon you that you discontinue the use of the name and character of Sam Spade forthwith." And on May 28, 1948, it again wrote to an attorney who had replied to the letter of May 13, saying,

"So far as the character Sam Spade is concerned, it is a most important and valuable part of the Maltese Falcon which is the exclusive property of Warner Bros. in the field of radio, television and motion pictures. To use Sam Spade is to use a valuable part of the Maltese Falcon. We are of course aware that some Sam Spade stories were published after the Maltese Falcon and doubtless the copyright proprietor of the original work authorized their publication. Doubtless as a matter of law, the publisher of Maltese Falcon could, if he wished, authorize additional Sam Spade stories in book form; but Warner Bros. has the exclusive rights of the radio rights to use the Maltese Falcon and is the only one who can authorize use of Sam Spade on the air.

"Moreover, upon examination of the radio shows which have been broadcast, you will observe something much more culpable than the use of the single character Sam Spade * * *." On June 1, 1948, Hammett's assignees formally notified him of the claims against them by Warner, asserting their rights against him under warranty to them in his contract of assignment that the permitted use of the assigned rights would not subject them to liability for infringement.

On May 28, 1948, Warner, joining Alfred A. Knopf, Inc., as plaintiff pursuant to the terms of their contract, brought an action entitled Warner Bros., Inc., and Alfred A. Knopf, Inc. v. Columbia Broadcasting System, Inc., William Spier, the Wildroot Co., Inc., and Regis Radio Corp., in the District Court for the Southern District of California,[1] against the broadcasting network, the producer, the sponsor, and the successor in interest to Hammett's assignees' rights to "Sam Spade." The complaint charged that the radio dramas in the series, "The Adventures of Sam Spade" and an individual program produced apart from that series constituted infringement of copyright of, and unfair competition with, the original stories, the book, and the motion picture called "The Maltese Falcon." As to copyright infringment the complaint charged: "17. Since about September 1946, defendants and each of them have been infringing each and all of the copyrights mentioned in this complaint by dramatizing the magazine stories and book and by writing a series of dramatic radio scripts entitled 'The Adventures of Sam Spade' and printing, publishing and vending said scripts, all of which scripts defendants have copied to a substantial degree from plaintiffs' copyrighted works. Said dramatic radio scripts have been produced and performed publicly for profit and transmitted by defendants and each of them within the past two years over the several radio stations affiliated with the defendant Columbia Broadcasting System, Inc. The exact number of separate infringements on the part of these defendants is not known to plaintiff at this time."

As to unfair competition, it charged: "20. * * * The character 'Sam Spade' is the principal character in plaintiffs' copyrighted work 'Maltese Falcon'; and the name and character of 'Sam Spade' have long been well known and identified in the public's mind with the plaintiffs' work; and in radio the name and character of 'Sam Spade' have come to be identified with several broadcasts licensed by plaintiffs. Defendants have without plaintiffs' permission appropriated the name and characterization of 'Sam Spade' as originally created in 'Maltese Falcon,' and have

---

[1] Case pending at date of publication.

copied and used the same in the title as a substantial part of the content of defendants' radio program. In the course of their radio programs defendants have from time to time referred to the 'Maltese Falcon' by name and have referred to various incidents, situations, [and] characters from the 'Maltese Falcon' in an attempt to trade upon the good will of plaintiffs' works and obtain unearned benefits therefrom.

On June 18, 1948, Warner amended its complaint before answer to join Hammett as a defendant and to modify the above quoted sections by adding to 17 the allegation that, "defendants have copied from plaintiffs' works, among other things, scenes, language, dialogue, plot, characters, and other materials thereof," and by changing the quoted part of 20 to read: "The character 'Sam Spade' is the principal character in plaintiffs' copyrighted work 'Maltese Falcon'.; and the names, characters, scenes, language, dialogue, plot and other materials used in 'Maltese Falcon' have, in the field of radio and motion pictures, been well known and identified in the public's mind with the plaintiffs' work. Defendants have without plaintiffs' permission appropriated names, characters, scenes, language, dialogue, plot and other materials as originally created in the 'Maltese Falcon,' and have copied and used the same as a substantial part of defendants' radio program. * * *"

This amendment followed the filing, by Hammett on June 9, 1948, of the present action for a declaratory judgment. In his complaint in this action appellant alleges substantially the facts set forth above and asks for a decree.

"1. Determining and adjudicating the rights of the parties herein in the premises aforesaid and determining and adjudicating that the defendant, Warner Brothers Pictures, Inc., has no rights to the character 'Sam Spade' excepting the right to use said character in and as part of the work entitled 'The Maltese Falcon' pursuant to the agreement between the parties dated June 23, 1930; and further

"2. For a decree enjoining and restraining defendant, its officers, agents, and employees, from further asserting, contending, claiming or alleging that it has any rights in or right to control the use of said character 'Sam Spade' or any title featuring the name 'Sam Spade' excepting the right to use said character in and as part of the work entitled 'The Maltese Falcon' pursuant to the agreement between the parties dated June 23, 1930; and

"3. For such other and further relief as to the court may seem just."

Warner answered, denying the right of appellant to the decree requested, both on the ground that Warner had the sole right to the use of the character "Sam Spade" in motion pictures and radio under the terms of its contract with Hammett and on the ground that the controversy between the parties over the broadcasts did not concern solely the right to the use of the character but also involved use of the story, other characters, the plot and other material from "The Maltese Falcon" in its printed and motion picture versions. It also set forth other defenses based on the claimed priority of the California action and alleged defects in the present action as to joinder of parties. Motions for summary judgment on affidavits were filed by both parties and the court below granted the appellee's motion, dismissing the complaint. The judgment of the court was based upon the exercise of its discretion to dismiss because the decree would not "determine the entire controversy between the parties" and because, "There can be a complete determination of all the issues to all the parties only in the California action, for it is only in that action that all the issues are raised and all the parties have appeared."

Hammett's appeal from this judgment is based, first, on the ground that unless the issue raised in this action must necessarily be disposed of in the California action, the court erred as a matter of law in dismissing the complaint and, second, on the further ground that, since this action was begun before Hammett was made a party to the California action, he is entitled as of right to a determination of the issues herein.

The appellee's motion to dismiss was addressed to the sound discretion of the district court. Brillhart v. Excess Ins. Co.,

316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620; Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321; Associated Indemnity Corp. v. Garrow Co., 2 Cir., 125 F.2d 462; Western Electric Co. v. Hammond, 1 Cir., 135 F.2d 283. Whether the order made was within the scope of the judicial discretion committed to the trial court by law should control decision here. The standard governing the exercise of discretion has been stated as whether the action "will serve no useful purpose," Carbide & Carbon Chemicals Corp. v. United States Industrial Chemicals, Inc., 4 Cir., 140 F.2d 47, 49, or whether the action "could be of some practical convenience to the parties," Larson v. General Motors Corp., 2 Cir., 134 F.2d 450, 453. And it has been said that the court should refuse "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." Aetna Casualty & Surety Co. v. Quarles, supra, 92 F.2d at page 325. See Note, Developments in the Law—Declaratory Judgments—1941–1949, 62 Harv. L.Rev. 787, 805 et seq. Whether the district court properly exercised its discretion must therefore depend upon an analysis of the relations of the present action to the controversy between the parties, its probable utility to them in eliminating uncertainties, and its relation to the action pending in the California court.

The legal questions raised by Hammett's complaint concern the scope of the protection accorded by the copyright assigned to the appellee, the extent of Hammett's right as author of the copyrighted work in the characters under the law of unfair competition, and the effect of the contract of June 23, 1930, on any rights remaining in Hammett at that time. Thus the complaint may be understood to assert that the use of the character and name "Sam Spade" alone would not amount to infringement of the copyright of "The Maltese Falcon" or be unfair competition or that even if such use by others might be either, it would not by Hammett or his assignees. It further must be understood to assert that the use by appellee of the character or name, except in connection with "The Maltese Falcon," would violate rights of Hammett in the character or name and that such use by Hammett or his assignees would violate no rights of Warner. See Colliery Engineer Co. v. United Correspondence Schools Co., C.C.S.D.N.Y., 94 F. 152, Nichols v. Universal Pictures Corp., 2 Cir., 45 F.2d 119, Fisher v. Star Co., 231 N.Y. 414, 132 N.E. 133, 19 A.L.R. 937, and Underhill v. Schenck, 238 N.Y. 7, 143 N.E. 773, 33 A. L.R. 303, as an indication of the variety and complexity of the issues raised and of the unlikelihood that any decree could take the simple and absolute form requested by appellant.

The controversy which puts these questions at issue arises out of the broadcasts produced by Hammett's assignees and there are no allegations of any other claims made by Warner than those made in connection with those broadcasts or of any other present facts raising the same questions. But the facts as to those broadcasts have created issues between the parties much broader than those raised in this action. Warner contends that the use of the materials from "The Maltese Falcon" went beyond mere use of the character "Sam Spade" and constituted a substantial plagiarism of other elements of that work. It complains of other practices as constituting unfair competition. And it apparently asserts that Hammett's role in the infringement was greater than is indicated by the terms of the assignment of May 15, 1946.

Thus it is apparent that disposition of this action in its present form would settle only a part of the controversy between the parties to it. This fact alone might leave the question of its utility very doubtful, but there are other related considerations. The issues which are raised are not of a kind subject to convenient determination apart from the rest of the controversy even if such determination were possible under the Declaratory Judgments Act, 28 U.S.C.A. §§ 2201, 2202. See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 242, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000; Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 5 Cir., 137 F.2d 176, 180. Instead, they arise in a field of law in which each case turns on its particular facts taken as a

more or less inseparable whole. See Nichols v. Universal Pictures Corp., supra, 45 F.2d 122. The use of a name or character in a literary production is not practically separable from the other elements of that production in determining whether rights in another literary property have been impinged upon. A decree defining the rights of the parties in the name and character "Sam Spade," in order to be useful to the parties, would have to define the rights of each in terms of the context and the manner in which the character could be used and exploited in relation to the existing works. Indeed it is probable that if all the issues raised by the facts concerning the broadcasts giving rise to this controversy were to be considered, it would not be possible to frame a decree defining the rights of Hammett in the character alone with sufficient precision to be of real help to the parties in determining their rights in connection with future use by either. In this respect the situation is in contrast to the situation in the more usual patent and insurance cases where the issues of infringement and validity of a patent or license and of liability and coverage are usually clearly separable. These factors weigh heavily against the granting of a declaratory judgment based on a consideration of only a part of the controversy despite the undoubtedly great desirability to Hammett of an early clarification of his rights in the controversy over the broadcasts. They are especially significant when his dispute is with Warner rather than with his other assignees.

The reasons militating against taking jurisdiction of this proceeding are reinforced when the effect of the pending Califoria action is considered. Even in situations in which declaratory judgments are useful, the pendency of a prior action raising the same issues has been found to be a sufficient ground to justify, although not to require, dismissal. Aetna Casualty & Surety Co. v. Quarles, supra; American Automobile Ins. Co. v. Freundt, 7 Cir., 103 F.2d 613; Larson v. General Motors Corp., supra, 134 F.2d at page 453; Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 99 F.2d 665. Only a few cases express a contrary view. See Carpenter v. Edmondson, 5 Cir., 92 F.2d 895, Mutual Life Ins. Co. v. Krejci, 7 Cir., 123 F.2d 594. With deference we do not think they should control in this instance.

A general rule for determining priorities as between pending actions on the basis of dates of filing has been stated in some of the cases, but is has been recognized that this rule is not to be applied in a mechanical way regardless of other considerations. Brillhart v. Excess Ins. Co., supra, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620; Chicago Furniture Forwarding Co. v. Bowles, 7 Cir., 161 F.2d 411; Western Electric Co. v. Hammond, 1 Cir., 135 F.2d 283. See Crosley Corp. v. Westinghouse Elec. & Mfg. Co., 3 Cir., 130 F.2d 474, 475; Cresta Blanca Wine Co. v. Eastern Wine Corp., 2 Cir., 143 F.2d 1012, 1014.

In the present controversy, the question of priority is not subject to simple mechanical determination by application of this rule. The first proceeding arising out of the facts on which this suit is based was Warner's California action, to which Hammett was not a party. Hammett first raised the issue of his rights in the character and name "Sam Spade" in this action. But the issue of Hammett's participation in the general infringement of "The Maltese Falcon" was first raised in Warner's amended complaint in the California action. Solution of these problems requires an analysis of the consequences to be anticipated from the decision to take or not to take jurisdiction.

We will assume for the purpose of discussing the priorities as between these suits that it is procedurally possible, as a result of amendment and joinder, that each of these actions may comprehend all the issues and all the parties now involved in either. Without this possibility there would be a clear balance of convenience in favor of the action in which all or most of the issues and parties could be joined, as they are now joined in the California suit.

Because of the inadequacy of the New York action in its present form, as indicated above, to effect a complete settlement, even as between parties, both actions would

have to be carried through to judgment. On the other hand, if all the issues between the parties to the New York action are to be settled properly by the decree rendered and multiplicity avoided, Warner must relinquish, or be deprived of, the advantage of the priority of its complaint against Hammett on the general infringement issue. And in order to avoid trying the issue of infringement twice against different parties it must relinquish the priority of its original complaint against Hammett's assignees. When the question of priorities is considered in the light of these consequences of the inadequacy of the present action to effect a complete settlement of all the issues or a useful settlement of any issue between the parties to it reason appears for considering the California action the proper one. Moreover it is not desirable that the anticipation by appellant of a joinder and of the raising of issues which were inevitable once the California action had begun should be permitted of itself to force a shift in the forum as the price of avoiding a multiplicity of actions involving the same or closely related issues.

It is argued, however, that the fact that Hammett was not made a party to the California action before commencing this action requires a contrary result as a matter of law because of the rule of priority of filing dates. The answer to this contention, in accordance with the principle of equitable application of that rule indicated above, by the Court of Appeals of the First Circuit seems to us to be conclusive of this claim. That court in a similar situation has held that, even when a party before it could not have become a party to a prior pending action, the fact that he might have participated in its defense with the defendants having a common interest was enough. Western Electric Co. v. Hammond, supra, 135 F.2d at page 287. We do not have to go so far since Hammett is in fact now a party and has appeared in the California action. Nor is this holding in conflict with Associated Indemnity Corp. v. Garrow Co., supra, since that was a case where in the absence of the missing party the issue could not have been raised at all.

Appellant argues further that the possibility of an exercise of discretion to dismiss based on the pendency of another action exists only where the issue in the declaratory judgment action must necessarily be decided in the pending action. Some cases certainly contain language to that effect, although it is often used in situations where the issue is in fact one whose determination in the other action is impossible. Maryland Casualty Co. v. Consumers Finance Service, Inc., 3 Cir., 101 F.2d 514, 515; Maryland Casualty Co. v. Faulkner, 6 Cir., 126 F.2d 175, 179; Guardian Life Ins. Co. v. Kortz, 10 Cir., 151 F.2d 582, 586. However, we are inclined to follow other decisions to the effect that it is enough that the issue is raised and may or can be decided in the pending action, thus treating the degree of likelihood of such determination as one factor to be considered in the exercise of discretion. See Brillhart v. Excess Ins. Co., supra, 316 U.S. at page 495, 62 S.Ct. 1173, 86 L.Ed. 1620; Western Electric Co. v. Hammond, supra, 135 F.2d at page 287. And in the present case we think it sufficient answer to this objection that the issue is raised by the pleadings in the California action and that, although a possibility exists that it may not be decided, its decision is very likely especially in properly determining the factors to be considered in computing the damages under the rule of Sheldon v. Metro-Goldwyn Pictures Corp., 2 Cir., 106 F.2d 45, should the question be reached, and it may be made certain if the appellant here counterclaims for a declaration.

■ Moreover it does appear that the broadcasts complained of originated in California and it also appears that all the parties have entered appearances in the California action. On the other hand, the contract between Hammett and Warner makes their rights subject to New York law in so far as state law is applicable. Yet in our view this circumstance is not of much significance on the motion to dismiss. First, whether the issues are to be tried in one place or the other is less important than that they are tried in a single proceeding from which a useful decree may emerge;

second, under the provisions of the new Judicial Code, if there is a clear preponderance in favor of another forum, the California court may yet in its discretion transfer the consolidated action at the request of a party. 28 U.S.C.A. § 1404(a). For the above reasons we hold that it was not an abuse of discretion or otherwise an error of law for the court to determine in the circumstances that the California action was to be preferred and, consequently, to dismiss this complaint.

Appellee alleges other defects in the complaint, including the failure to join Knopf, as the owner of the copyright, and appellant's "unclean hands," both of which we find unnecessary to consider since, at most, they merely add to the weight of already sufficient factors tending to support the exercise of discretion below. With all the facts, all the parties, and all the issues before a single court, it might be possible to enter a decree which would in a useful way determine the issues here raised by Hammett. We do not, however, now express any opinion as to the extent to which the decree sought involves questions within the power of the court to decide under the Declaratory Judgments Act. See Larson v. General Motors Corp., supra, 134 F.2d at page 453.

Judgment affirmed.

CLARK, Circuit Judge (dissenting).

While I do not wholly share my brothers' conviction of the comparative advantages shown by the California action over the one below—any modern civil action being capable of expansion to fit the needs of the occasion—I have no serious concern as to giving a preference to that action. Had that been granted by means of a transfer of the action under the new 28 U.S.C.A. § 1404(a) or even by a stay, I should say no more. But it is a serious matter, I suggest, for a court to take the position of refusing all jurisdiction to a litigant with an unadjudicated cause quite within the court's statutory authority. Jurisdiction to litigate is not something to be granted or withheld by a court at its wish or convenience. I discern a growing tendency in the congested Southern District of New York to look for excuses to push a case off the docket; even though I sympathize with the difficult situation facing overworked judges, I cannot believe this a permissible course or one fair to litigants. Under § 1404(a), it seems to me the remedy must now be limited to transfer.