**SENTRY CORPORATION, Plaintiff,**

v.

**CONAL INTERNATIONAL CORP.,** Howard M. Lawn, Martin S. Zisser, Nederlandsche Handel Maatschappij, N.V., also known as Netherlands Trading Society, John Doe, James Doe and Richard Roe, names fictitious, and unknown to the plaintiff, parties intended being in possession of certain · promissory notes made by the plaintiff described in the complaint herein, Defendants.

United States District Court
S. D. New York.
June 30, 1958.

Weisman, Celler, Allan, Spett & Sheinberg, New York City, for plaintiff.

Dorsey, Burke & Keber, New York City, for defendant Nederlandsche Handel Maatschappij, N.V.

BICKS, District Judge.

On or about July 1, 1957 Conal International Corp., (thru its president, Howard M. Lawn) a New York corporation, with its principal office in New York City, and plaintiff Sentry Corporation, a Delaware corporation with its principal office in Philadelphia, entered into an agreement in New York by the terms of which plaintiff agreed to buy and Conal agreed to sell, 186,700 shares of common stock of Swan-Finch Oil Corp. for $240,000. This consideration was in the form of four negotiable promissory notes, in amount of $60,000 each, one being due on each of the following dates: October 15, 1957, December 15, 1957, February 15, 1958, April 15, 1958.

On or about December 10, 1957 the maker and payee agreed to extend the time of payment of the notes due October 15 and December 15, 1957 to February 15, 1958, and in connection therewith, the maker executed two new notes, each due on said date. In return for the grant of time extension, and as collateral security, Sentry delivered to Conal its 6% convertible debentures of $100,000 face value. None of the notes has been paid.

The agreement of July 1, 1957, provided, *inter alia*, that to induce Sentry to enter into the same, Conal warranted and represented:

"(a) Conal has the full right and authority to sell, assign and transfer all of the said shares of Swan-Finch stock to Sentry. * * *

"(b) Said sale, assignment and transfer * * * do not violate and are not contrary to or inconsistent with any provision * * * of any agreement, rule, statute or law."

Some time in late January, 1958 Sentry, allegedly learned that Lawn had been convicted of tax fraud, and, upon further investigation, Sentry alleges, it discovered that Conal's written representations made in the July 1 agreement were false, in that "Conal had no right or authority to sell or transfer any of the said securities, it did not have marketable title thereto, the said securities could not be transferred to the plaintiff since a stop order had been issued by the transfer agent and was and continued to be in

effect with respect thereto, the securities were the subject of an action in this Court to enjoin their sale or transfer brought by the Securities and Exchange Commission, and the sale or transfer thereof had been enjoined by a final decree of this Court." (Affidavit of Meyer A. Abrams, president of Sentry Corporation, p. 5.)

Sentry promptly notified Conal that it rescinded the July 1 agreement, tendered the Swan-Finch stock and demanded the return of the promissory notes and debentures. It now appears, however, that on December 16, 1957 the two renewal notes found their way into the hands of defendant Nederlandsche Handel Maatschappij, N.V., (also known as Netherlands Trading Society) a banking corporation organized under the laws of the Kingdom of the Netherlands, with its only United States office in New York, under circumstances which the endorsee alleges, constitute it a holder in due course.[1] This status is vigorously challenged by the plaintiff which contends additionally that the transferee knew, or, in the exercise of reasonable business prudence, should have known of the infirmities claimed by the plaintiff.[2]

Sentry communicated with Netherlands on February 7, 1958, reported the facts and advised it of its intention to institute court action to rescind the July 1 transaction.

On February 17, 1958 the notes were presented for payment and dishonored. Thereupon, Netherlands, as plaintiff, instituted suit in the Court of Common Pleas, Philadelphia County, Pennsylvania, against Sentry, as defendant, for judgment on the two notes. A writ of attachment was issued out of said Court on February 18, 1958, and the verified complaint filed February 19, 1958.

On March 15, 1958 the action was removed to the United States District Court for the Eastern District of Pennsylvania.

Sentry commenced its action in this court against Conal, Netherlands, and other transferees, on February 20, 1958,[3] alleging that it was entitled to rescind the transaction as void and illegal under the provisions of the Securities Act of 1933 and that in any event these notes were void in the hands of all the defendants because of the frauds practiced, of which all defendants had knowledge. The relief sought is a judgment that the defendants be enjoined from negotiating, transferring or enforcing Sentry's notes, that the notes be adjudged void and be delivered up and cancelled, and that Sentry's debentures be delivered up and returned to Sentry.

Sentry moves this Court now to grant a temporary injunction, restraining defendant Netherlands from seeking to enforce the promissory notes in any other jurisdiction, and restraining Netherlands from proceeding with the action instituted by it upon said notes, pending in the United States District Court for the Eastern District of Pennsylvania.

Defendant Netherlands has filed a cross motion for "summary judgment as against the plaintiff * * * or in the alternative judgment dismissing the complaint as to the defendant * * * because of a prior action pending between the said defendant and the plaintiff involving the same subject matter * * * or in the further alternative to enjoin the plaintiff from prosecuting this action in this Court against the said defendant * * * *"

The sub-agent of Netherlands, who dealt with Conal re the promissory notes presents the following version of the transaction: On December 13, 1957, Lawn requested a loan to Conal, secured by the two notes. He presented the 1956 annual report of Sentry, including its

---

1. See N.Y. Negotiable Instruments Law, § 96.

2. See N.Y. Negotiable Instruments Law, §§ 91, 94, 95.

3. The action was instituted pursuant to 48 Stat. 86, § 22(a) (1933) as amended, 15 U.S.C.A. § 77v(a) (Supp.1957).

balance sheet as of December 31, 1956. The sub-agent agreed to a loan of $80,-000. against Conal's note personally guaranteed by Lawn, and secured by Sentry's notes. The transaction was completed on December 16, 1958. The bank immediately opened an account for Conal and placed $80,000 to its credit, which amount was subsequently entirely withdrawn. Neither on December 16, nor at any previous time, did the sub-agent have any knowledge or information concerning the nature of the Conal-Sentry transaction. The name Swan-Finch was never mentioned. The bank's agent was the only other official connected in any way with the transaction, and he knew only what the sub-agent reported to him. The sub-agent was satisfied to take the notes because, among other reasons, they were short term paper, Sentry had sufficient assets to pay them, its stock was listed on the American Stock Exchange and was quoted at about $1 per share, which was substantially in excess of the book value per share, and he could not believe that its president would issue paper payable in 60 days without an intention to honor the obligation. His previous business relations with Mr. Lawn and other corporations in which he was interested had been satisfactory. The first information of any kind that he or any official or employee of Netherlands had of the alleged consideration for the original notes or of any claim by Sentry of a defense upon the renewal notes which Netherlands held was on February 7, 1958, when Abrams and two attorneys appeared at his office and informed him that the notes would not be paid at maturity.

Sentry, in turn, alleges that Netherlands had a close relationship with Conal and Lawn, had numerous transactions with Lawn and the many corporations controlled by him, and knew of Lawn's conviction for tax fraud at the time it received the notes; and that the transaction was so irregular that Netherlands was obliged to make inquiry as to the nature of the Conal-Sentry transaction and the consideration given for the notes, which inquiry would have disclosed the alleged fraud upon Sentry. Sentry alleges further that the Netherlands loan was made so that Lawn could reduce past due loans to other of Lawn's corporations. To present a better loan picture, it is alleged, Netherlands deliberately failed to make appropriate investigations.[4]

Since the facts relevant to Netherlands' good faith or its lack thereof are peculiarly within its own knowledge, and have not as yet been fully ascertained by Sentry, summary judgment is inappropriate.[5]

We now proceed to consideration of plaintiff's motion to stay Netherlands, and Netherlands' cross-motion to dismiss the complaint in this District, or, in the alternative, to enjoin Sentry from prosecuting the instant suit. The claim set forth in each of the pending suits could properly be asserted as an affirmative defense,[6] or counterclaim[7] in the other. In Netherlands' Pennsylvania action, the plaintiff could urge that which it urges in its suit here.[8] In the instant litigation, likewise, Netherlands could assert the claim it seeks to enforce in its Pennsylvania suit.[9]

In such circumstances, the chronological sequence of the actions should be of secondary importance as compared

---

4. See, e. g., Canajoharie Nat'l Bank **v.** Diefendorf, 1890, 123 N.Y. 191, 25 N.E. 402, 10 L.R.A. 676; Kelso & Co. v. Ellis, 1918, 224 N.Y. 528, 121 N.E. 364.

5. See Rule 56(f), Fed.R.Civ.P. See also 6 Moore, Federal Practice (2nd. ed. 1953) para. 56.24, at pp. 2345–48.

6. Rule 8(c), Fed.R.Civ.P.

7. Rule 13(a), Fed.R.Civ.P.

8. By bringing suit on the notes in Pennsylvania, Netherlands waived its right to object to the venue of any counterclaim. See 3 Moore, Federal Practice (2nd. ed. 1948), para. 13.16.

9. Rule 15(a), Fed.R.Civ.P.

774

with the balance of convenience.[10] Since all the parties necessary to a complete determination are before this Court and jurisdiction over some of them has not or cannot be obtained in the Pennsylvania suit, to stay the New York suit would result in multiplicity of suits wasteful to the litigants as well as the Courts.[11] The basic issue common to all suits upon this series of notes is whether or not the original payee could recover against the maker. The payee as well as the alleged holder of another one or more of the notes of the series are parties to the suit in this Court; neither is a party to Netherlands' suit in Pennsylvania.[12] The balance of convenience, it appears, preponderates in favor of the suit in this jurisdiction.

■ Still another factor remains to be considered. Netherlands, in commencing its state court suit in Pennsylvania, availed itself of the Pennsylvania procedure authorizing attachment. It attached a bank account in which the balance was $3,283.32. It would obviously be unfair to deprive Netherlands of whatever advantage it derived therefrom.

Accordingly, plaintiff's motion to stay Netherlands from prosecuting its suit in the United States District Court for the Eastern District of Pennsylvania, will be granted upon the following condition:[13] that if Netherlands releases the attachment of funds in Pennsylvania, plaintiff shall deposit in the registry of this Court, cash in amount of $3,500, or a surety company bond in like amount.

So ordered.

10. Remington Products Corp. v. American Aerovap, Inc., 2 Cir., 1951, 192 F.2d 872; Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 3 Cir., 1951, 189 F.2d 31, affirmed 1952, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200. See also Hammett v. Warner Bros. Pictures, 2 Cir., 1949, 176 F.2d 145.

11. See Landis v. North American Co., 1936, 299 U.S. 248, 57 S.Ct. 163, 81 L. Ed. 153; Crosley Corp. v. Hazeltine Corp., 3 Cir., 1941, 122 F.2d 925, 930.

12. Martin S. Zisser, as holder of one or more of the notes, had instituted suit on March 17, 1958, in the United States District Court for the Eastern District of Pennsylvania. Subsequently, he consented to a dismissal of his action, and served an amended answer, asserting a counterclaim, in Sentry's suit.

13. See Rule 65(c), Fed.R.Civ.P.