**PHARMA–CRAFT CORPORATION, a Delaware corporation, Plaintiff,**

v.

**F. W. WOOLWORTH COMPANY, a New York corporation,**

and

**Associated Products, Inc., an Illinois corporation, Defendants.**

No. 1270.

United States District Court
M. D. Georgia
Macon Division.
June 2, 1956.

Charles W. Walker (of Anderson, Anderson, Walker & Reichert), Macon, Ga.,

**300**

and Charles J. Merriam, Chicago, Ill., for plaintiff.

Charles J. Bloch (of Bloch, Hall, Groover & Hawkins), Macon, Ga., for defendants.

BOOTLE, District Judge.

The plaintiff, Pharma-Craft Corporation, by assignment from W. Kedzie Teller, patentee, is the owner of United States Patent No. 2,732,327, issued January 24, 1956, containing claims to an anti-perspirant deodorant soap gel stick.

This action was filed in this Court on January 25, 1956, the day after the patent was issued. It names as defendants F. W. Woolworth Company, a New York Corporation with principal offices in New York, and Associated Products, Inc., an Illinois Corporation with principal offices in New York, and alleges an infringement of said patent in that Woolworth is selling within the jurisdiction of this Court anti-perspirant sticks and particularly sticks known as "5-Day Stick Deodorant" and in that Associated Products is selling anti-perspirant sticks which are an infringement of the patent to defendant Woolworth for sale in the City of Macon, Georgia. No service has been, or can be, had on Associated Products, Inc. in this district.

Immediately after this action was filed, and on January 27, 1956, plaintiff's counsel applied for, and obtained, an order permitting plaintiff to serve notice for taking depositions under Rule 26(a), Federal Rules of Civil Procedure, 28 U.S. C.A., within twenty days after the commencement of the action, the witnesses named being: J. W. Largen, Macon, Georgia, Manager of Woolworth; George G. Kolar, Gustave Kolar, Joseph Serhant, 7475 Rogers Avenue, Chicago, Illinois, and Morris Levinson, Bernard Gould, Frederick J. Buwen and Matthew C. Baranowski, 445 Park Avenue, New York City, New York.

By agreement of counsel, time for Woolworth to answer or otherwise move with respect to this complaint was extended to, and including, March 25, 1956. On March 24, 1956, Woolworth filed its motion to transfer this action under 28 U.S.C.A. § 1404(a) to the United States District Court for the Northern District of Illinois, Eastern Division, and also its motion for stay of proceedings in this court, including the taking of depositions, pending a decision on the motion to transfer. The motion to transfer was set for hearing on April 10, 1956 and the motion to stay was granted so that the plaintiff has not yet been at liberty to proceed with the taking of depositions.

On March 26, 1956, Woolworth filed its answer admitting the issuance of the patent; denying that said letters patent were duly and regularly issued; denying that it or Associated Products are infringing said patent; admitting that it is selling a "5-Day Stick Deodorant" in Macon, Georgia; denying that Associated Products is selling to it products which are an infringement of the patent and setting up other defenses including an assertion that the claims of the patent are indefinite, vague and include inoperative materials and proportions; that no invention was required to devise and perfect the alleged improvements in view of the state of the art prior to said alleged invention; that the subject matter of the patent was obvious at the time the alleged invention was made to any person having ordinary skill in the art to which such subject matter pertains and that the alleged improvements were invented, known and used by others before the alleged invention and discovery thereof by Teller and were patented and/or described in printed publications before Teller's alleged invention listing three patents and three articles.

Also, on March 26, 1956, plaintiff applied for, and obtained permission to file a supplemental complaint alleging that since the filing of the original complaint Woolworth had infringed the patent within the jurisdiction of this Court and elsewhere by selling infringing articles other than "5-Day Stick Deodorant". Promptly thereafter and, on March 31, 1956, Woolworth filed its motion to set aside the order of March 26, 1956 allowing the filing of the supplemental complaint,

which motion, together with the motion to transfer, came on for hearing April 12, 1956. Thereafter and, on April 23, 1956, an order was entered denying the motion to disallow the filing of the supplemental complaint and reciting that the filing of the supplemental complaint should not affect the motion to transfer and relieving Woolworth from the necessity of filing defensive pleadings to the supplemental complaint until further order of the Court. ·

Both parties have filed numerous affidavits, briefs and reply briefs with respect to whether or not this case should now be transferred to the Illinois Court. A succinct statement of these contentions, as they were presented, follows:

Woolworth points out in its motion and in affidavits by Kenneth W. Greenawalt, New York counsel for Woolworth, Morris L. Levinson, of New York City, President of Associated Products, Inc. and Benjamin B. Schneider, Chicago counsel for Associated Products, Inc., that, on January 26, 1956, the day after this complaint was filed, this plaintiff sued in the Northern District of Illinois, Eastern Division, at Chicago, Associated Products, Inc. (the defendant named but which cannot be served in this suit), Kolar Laboratories, Inc., and 5-Day Laboratories, Inc., charging an infringement of the Teller patent by reason of the manufacture and sale by them of the same product alleged to be the infringing product in this case; that Kolar Laboratories, Inc. is the manufacturer of the alleged infringing product which is distributed by Associated Products and sold by Woolworth; that in this case only the retailer is before the Court, whereas in the Illinois case there are before the Court the manufacturer and the distributor and that while Woolworth is not named in the Illinois suit it is as amenable to suit in that Court and is willing to accept service in that case; that plaintiff, before being stayed by order of this Court, had notice for taking the depositions of individuals connected with Woolworth, Associated Products and Kolar Laboratories, Inc.; that persons connected with Kolar

Laboratories, Inc., are the only persons having full knowledge of the development, composition and manufacture of the alleged infringing product and are located in Chicago and its suburbs; that the patentee, Teller, resides in a suburb of Chicago, and that plaintiff's principal counsel and also counsel representing Associated Products and Kolar Laboratories have offices in Chicago.

Then plaintiff says, through an affidavit of its Chicago counsel, Charles J. Merriam, that this case, if transferred to Illinois, could not be tried within one and one-half years; that there is no showing that any necessary witness in this case lives in the Chicago area; that the witnesses upon whom plaintiff intends to call are not in the Chicago area, but are located closer to Macon than to Chicago; that this case is not limited to 5-Day Deodorant Sticks, but that Woolworth has been selling other infringing sticks including specifically Stopette and Odo-Ro-No; that the anti-perspirant stick, the subject matter of this patent, has become an extremely important cosmetic through the efforts of the plaintiff (in one of plaintiff's briefs it says that the subject matter of the patent is relatively simple and describes it as follows: "Sodium Zirconium lactate, an anti-perspirant was patented for use in a cream substance. The trade recognized that a soap gel stick is much more saleable and more pleasant to use than a cream. Many suppliers have been selling a soap gel stick with deodorant elements, but without anything to deter perspiration. Mr. Teller discovered that this particular perspiration deterrent does not cause the soap gel stick to melt or disintegrate as had been the case with other perspiration inhibitors. This was new, and this he patented. It is that simple."); that it began making the sodium zirconium lactate stick about a year ago and since then has sold several million of such sticks; that by the time the patent was issued two infringing articles were on the market, one being the 5-Day Stick and the other a stick marketed by the Coty company; that a suit against the Coty sticks

is pending in Atlanta, Georgia and cannot be removed; that after the commencement of this suit additional infringing articles have come on the market including Stopette and Odo-Ro-No; that plaintiff expended $740,127.08 in 1955 in advertising its soap gel stick and has an advertising budget of $1,199,920.20 for 1956 for the stick; that Woolworth is taking advantage of the market plaintiff has created and using confusing advertising and that Odo-Ro-No is being promoted by price-cutting tactics in that three free sticks are being given with each twelve purchased; that for all of these reasons it is of the utmost importance to plaintiff that trial be had promptly and not delayed for one and one-half years; that the motion and original set of affidavits fail to show that Chicago would be more convenient to Woolworth than Macon; that Woolworth's main offices are in New York; that Woolworth does not have counsel in Chicago so far as the record shows; that Mr. Schneider, so far as this case is concerned, represents only Associated Products and certain officers of Kolar Laboratories, who are not sued; that while the convenience of Associated Products is not material, it not being amenable to this suit, nevertheless, it has no office or place of business in Chicago; that Odo-Ro-No, sold by the defendant, is made by the Northam Warren Corporation, a New York Corporation having principal offices in Connecticut and not licensed to do business in Illinois; that affiant, Mr. Merriam, believes its product is made somewhere in the east; that Stopette, sold by the defendant, is distributed by an Illinois corporation, Jules Montenier, Inc., but affiant is advised that the product is not made in Illinois and that the company has just been purchased by Helene Curtis, Inc.; that plaintiff's witnesses will be Mr. Largen, manager of Woolworth's store in Macon, if this item is not stipulated, Dr. Gordon Ford, a Professor at Mercer University, Macon, Georgia, to testify as to the chemistry involved, a witness from Atlanta to testify to the purchase of the Odo-Ro-No stick from defendant in Atlanta, unless this is stipulated, Mr. John T. McPhail, of Chattanooga, Tennessee, to prove the purchase of the Stopette stick from Woolworth's store there unless that be stipulated, Dr. Maison G. de Navarre, of Detroit, Michigan, plaintiff's expert (plaintiff says later he is not available), and Mr. Grover Dunn, of Atlanta, Georgia, to testify to the analysis of the infringing sticks, unless that is stipulated; that plaintiff estimates its part of the case will take less than one day; that Woolworth's motion and original set of affidavits fail to identify a single witness who will appear in the case; that while plaintiff had served notice to take depositions in Chicago, these were for discovery purposes and plaintiff has no reason to believe that the depositions will be necessary in the trial; that plaintiff's taking of depositions was postponed at the request of some of the interested parties and then that no notice was given to affiant, Mr. Merriam, of defendant's motion to stay the depositions and that plaintiff feels and says that this motion to transfer is solely for the purpose of delay.

Then come additional affidavits in support of the motion, one from Mr. Levinson, President of Associated Products, Inc., two from R. Howard Goldsmith, a member of the Chicago Law Firm of Schneider & Dressler, one from Mr. Charles J. Bloch, Macon attorney for Woolworth, and one from Mr. Kenneth W. Greenawalt, New York counsel for Woolworth, that Teller was not "the first to prepare a commercially acceptable anti-perspirant or deodorant stick"; that for many years there have been a great number of commercially successful deodorant sticks; that a Sutton stick has a sodium stearate base and is sold and advertised as stopping perspiration odors; that similarly successful sticks are the Dunhill and the Tussy; that a Stopette stick form of anti-perspirant which did not contain an alcohol-sodium stearate soap-gel, nor sodium zirconium lactate, was marketed by Jules Montenier, Inc., of Chicago, Illinois, prior to Teller's alleged development; that Kolmar Laboratories

of Milwaukee, Wisconsin (not to be confused with Kolar Laboratories of Chicago) began shipping the Stopette stick the latter part of December, 1955, prior to the issuance of the Teller patent; that Kolmar developed a formula for the alcohol-sodium stearate soap stick containing sodium zirconium lactate independently and without knowledge of any work by Teller; that the Odo-Ro-No stick was in manufacture in December, 1955, although not on the market until February, 1956, after the issuance of the Teller patent; that Associated Products began to advertise its deodorant stick in November, 1955, and will spend in excess of $1,000,000 in 1956 advertising "its deodorants"; that while Associated Products has no regular business office in Chicago, it is an Illinois corporation and its President, Mr. Levinson, spends considerable time there as a Director of two corporations attending at their offices several days at a time, several times each month; that he has never been to Macon, Georgia, and has no reason for going there; that the Chicago case will be tried by Judge Campbell, whose Clerk informed affiant, R. Howard Goldsmith, that the Chicago case might reach pre-trial conference by September, 1956, and, "if so, said case would then be set for trial in the late fall or winter of this year. It might be reached for trial in the fall or winter, but more likely sometime after the first of this coming year"; that on information and belief it is Goldsmith's understanding that the testimony of the following witnesses will be sought as necessary witnesses on behalf of Kolar Laboratories, Inc., and Associated Products, Inc., in the Chicago case:

1. George G. Kolar, of Chicago, connected with Kolar Laboratories, Inc., having full and direct knowledge of the development, composition and manufacture of the 5-Day stick anti-perspirant alleged to infringe the patent in suit and whose testimony will center about Kolar Laboratories' work with sodium zirconium lactate in alcohol-sodium stearate soap gels to make stick deodorants to show that no patentable invention was involved in making such a product.

2. W. Kedzie Teller, of Chicago, to show the circumstances under which the alleged invention of his patent in suit was made to show that no patentable invention was involved.

3. One or more officers and employees of Kolmar Laboratories, Inc., Milwaukee, Wisconsin, who reside in or about Milwaukee, Milwaukee being about 100 miles from Chicago, whose testimony will center about showing that, in their independent work with sodium zirconium lactate in alcohol-sodium stearate soap gel to make stick deodorants, no patentably inventive act was involved in making such a product.

4. One or more employees of National Lead Company, New York City, N. Y., whose testimony will center around its development of sodium zirconium lactate as an anti-perspirant agent for use in anti-perspirant products or compositions generally, and its activities in promoting the sale of sodium zirconium lactate for such use, to show that no patentably inventive act was involved in using it in an alcohol-sodium stearate soap gel carrier.

5. An expert witness from the Chicago, Illinois or New York, N. Y. area, to deal with the chemistry involved and related matters;

that plaintiff's product is manufactured in Batavia, Illinois, in the Northern District of Illinois, Eastern Division, 37 miles from Chicago; that one of the principal issues in this case is the validity of the Teller patent involving the question of whether the subject matter is new, involves patentable invention, and whether Mr. Teller was in fact the first inventor; that an examination and study of the history of anti-perspirants will be required in order for Woolworth to assert and defend its legal rights and that such examination and study will necessarily cover a period of years prior to the institution of this action and will involve an examination of various research workers including, but not limited to, officers and/or employees of Kolmar, of Milwau-

kee, Wisconsin, Kolar, of Chicago, Illinois, and National Lead, of New York; that Woolworth, being only a retailer, will necessarily turn to and rely upon its suppliers for oral and written evidence in defense of this action on the merits; that should the motion to transfer be granted, Woolworth will expect to engage patent counsel in Chicago, probably Schneider & Dressler, who are already familiar with this matter; that plaintiff is one of the suppliers of Woolworth which sells "Fresh Stick Deodorant", and presumably plaintiff desires that Woolworth have the benefit of plaintiff's advertising in the sale of plaintiff's product; that Woolworth is not engaged in any price-cutting practices but sells the Odo-Ro-No stick at the fair trade retail price fixed by the manufacturer, 69¢ for each stick; that defendant has nothing to do with the promotion or advertising of any of its suppliers of deodorant sticks; that the motion to transfer is not for the purpose of delay, but is made in good faith and solely for the purpose of avoiding a multiplicity of actions and to have the issues involved tried out in the most convenient forum to every one concerned; that one cannot help but wonder why the plaintiff which has, or had, its principal office in New York City, did not bring suit in New York against Woolworth, which also has its principal office in New York.

Then follows an additional affidavit by Mr. Merriam, of counsel for plaintiff, relating his unsuccessful efforts to obtain further information as to when a trial can be obtained in the Chicago case and in this case, if transferred to Chicago and consolidated with the case there pending, and setting forth an analysis made by Mr. Merriam of the reported decisions of Judge Campbell in patent or trademark matters since January, 1946. Attached to this affidavit is a transcript of a conference between Mr. Merriam, Mr. Goldsmith, and Honorable William J. Campbell, Judge of the United States District Court for the Northern District of Illinois, on May 1, 1956, at which time the Court advised counsel that he could not

give them any definite estimate as to when they were going to trial; that he will get to the case as soon as he can and the Georgia Court he assumes will do likewise.

Then follows an affidavit from Mr. Teller, the patentee, that the Sutton stick, the Dunhill stick and the Tussy stick, mentioned by Mr. Levinson, contain no anti-perspirant material and no perspiration inhibitive material and that the Stopette stick, also mentioned by Mr. Levinson, has been abandoned and replaced by an alcohol-soap gel stick containing sodium zirconium lactate which is an infringement of plaintiff's patent; that prior to plaintiff's stick no alcohol-soap gel anti-perspirant stick existed so far as affiant has been able to find through a diligent search.

Commenting upon all witnesses Woolworth expects to call, Mr. Teller says:

1. George G. Kolar has never made any assertion that he developed a sodium zirconium lactate soap gel stick prior to the time of applicant's development thereof, nor is there any pleading in this case or in the Chicago case that Mr. Kolar is a prior inventor.

2. So far as his own (Teller's) availability for trial is concerned, he knows of no issues under the pleadings which would require his presence in court, but he would welcome the chance to come to Macon.

3. Affiant knows Mr. Lessing Kole, Chairman of the Board of Kolmar, and Mr. Walter Wick, President of Kolmar; that plaintiff has licensed J. R. Watkins Company to make a deodorant stick under the patented soap gel sticks for a licensee of plaintiff, and affiant is advised that Kolmar Laboratories is to make these licensed sticks and apply plaintiff's patent number thereto; that no other person filed application for patent for this invention and that he never got into interference with any application by any one; that although he has discussed the patent situation with Messrs. Kole and Wick, neither of them indicated in any way that they or either of them had filed a patent

application claiming the invention; that since February, 1956, it has been too late for them to do so, since more than one year has elapsed since the first sale of plaintiff's patent stick; that Dr. Herbert Heinrich, until late in 1955, Director of Research of Kolmar, now Director of Research for Coty, advised affiant that the first sodium zirconium lactate stick put out by Kolmar was for Coty, and it was put on the market some months after plaintiff's stick appeared on the market; that Coty has agreed to take a license under the patent in suit and is cooperating with affiant in the production of its stick.

4. That while National Lead developed sodium zirconium lactate for use in a cream deodorant prior to work done by affiant, Mr. Greenawalt does not say, and it is not a fact, that National Lead or any one on its behalf did any work toward the development of an alcohol-soap gel stick containing sodium zirconium lactate prior to affiant's work or prior to knowledge by them of affiant's work; that affiant has had conferences with National Lead and its counsel since the issuance of the patent in suit and they have never at any time made a claim to priority as against affiant.

Mr. Teller's affidavit continues that while Mr. Greenawalt denies that Woolworth is engaged in price-cutting tactics he does not deny that Woolworth is buying Odo-Ro-No sticks or receiving six free with each twelve purchased; that such tactics are designed not to pass on the benefits of lower price to the ultimate purchaser, but to induce retailers like Woolworth to buy and push sticks like Odo-Ro-No because of the lower price to the retailer; that prior to February 1st, 1955, plaintiff disclosed the Fresh stick to National Lead; that Kolar developed their product under a license from National Lead and that this development was not "independent" as some of defendant's affidavits state; that Kolmar put out its first sodium zirconium lactate soap gel stick under the auspices of National Lead and the purchaser of that article, Coty, has agreed to take a license

under plaintiff's patent; that there is no positive statement in any affidavit that any one at Kolmar or at Kolar worked upon a sodium zirconium soap gel stick prior to January 1, 1955, or even prior to February 1, 1955, when plaintiff's product was first sold; that the Fresh alcohol-soap gel stick was first shipped in February, 1955 and that with reference to expenditures claimed by Mr. Levinson for advertising Associated Products' "deodorants" it is not stated what, if any, part of this expenditure is on the 5-Day deodorant stick and affiant knows that Associated also sells 5-Day deodorant pads and much of its advertising is devoted to that product.

Then follows the final affidavit of Mr. Greenawalt, of counsel for Woolworth, indicating a readiness to enter into appropriate stipulations covering the testimony of plaintiff's Georgia witnesses and the facts as to any bona fide purchases of alleged infringing articles made in Woolworth's stores in Macon, Atlanta, or Chattanooga and covering chemical composition of the articles sold, and reiterating his statement that Woolworth is not engaged in any price-cutting tactics, but stating that the manufacturers of Odo-Ro-No did make Woolworth an introductory offer (no longer in effect), whereby Woolworth did receive six sticks free with each twelve purchased and that such introductory arrangements are quite common in the cosmetic field.

The venue of this action is covered by 28 U.S.C.A. § 1400(b), which provides:

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

The defendant Woolworth does business in Illinois as well as in Georgia, and, therefore, since "resides" in Section 1400(b) must be construed the same as "residence" in Section 1391(c), this action could have been brought in Illinois. Dalton v. Shakespeare Co., 5 Cir., 196

F.2d 469. Thus, the plaintiff had a choice of at least two forums in which to sue Woolworth.

When the Judicial Code was revised in 1948, a new provision was inserted, Section 1404(a), which provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Prior to the enactment of the last mentioned section there was no provision for the change of venue in the federal system but there was the doctrine of "forum non conveniens" under which the Court could dismiss—not transfer—the cause, if the Court thought the doctrine applicable. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055; Aircraft Marine Products v. Burndy Engineering Co., D.C.S.D.Cal., 96 F.Supp. 588. The underlying philosophy of the doctrine is set forth in the Gulf Oil Corporation case and there are listed factors to be considered in its application including private interests of the litigants, relevant ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, cost of obtaining attendance of willing witnesses, possibility of obtaining view of the premises, if needed, and all other practical problems that make trial easy, expeditious and inexpensive. The Court said [330 U.S. 501, 67 S.Ct. 843] "Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation", and continued, "But unless the balance [of convenience] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed", and referred to "those rather rare cases where the doctrine should be applied". Justice Black, dissenting, was of the view that the doctrine should not be applied in absence of a statute and feared that "The broad and indefinite discretion left to federal courts to decide the question of convenience from the welter of factors which are relevant to such a judgment, will inevitably produce a complex of close and indistinguishable decisions from which accurate prediction of the proper forum will become difficult, if not impossible." The Gulf Oil Corporation case was decided in 1947, and the following year brought the Code revision and Section 1404(a), above quoted, of which the Supreme Court says: "As a consequence, we believe that Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader." Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789. See also, Amalgamated Ass'n, etc., v. Southern Bus Lines, 5 Cir., 172 F.2d 946, 948; Burges v. Proctor & Gamble Defense Corp., 5 Cir., 172 F.2d 541, and Jiffy Lubricator Co. v. Stewart-Warner Corp., 4 Cir., 177 F.2d 360, 362.

Whether or not, as predicted by Justice Black, the doctrine of forum non conveniens, now supplemented by the statute, has produced a complex of indistinguishable decisions, it seems that Judge Warlick, in Clayton v. Swift & Co., D.C. W.D.N.C., 137 F.Supp. 219, 222, has given us a sound and practical rule to go by when he wrote: "To my way of thinking it [the statute] means nothing more than that one use his God given common sense in interpreting it into the facts of a case."

While, normally, unless the balance of convenience is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed, Wiren v. Laws, 90 U.S.App.D.C. 105, 194 F.2d 873, 875; Blake v. Capitol Greyhound Lines, 95 U.S.App.D.C. 334, 222 F.2d 25, and other cases cited under note 9, of Section 1404(a), Title 28, U.S.C.A., exactly how much weight must be attached

to the plaintiff's choice of forum must await the particular facts of each arising case, and since the enactment of the statute "defendant's mandatory margin for victory * * * need not be an overwhelming one", and "disturbing plaintiff's choice of forum is no longer a rarity". Paragon-Revolute Corp. v. C. F. Pease Co., D.C.D.Del., 120 F.Supp. 488, 489–90.

■ On a motion to transfer "each case, as a practical matter, turns upon the peculiar facts involved in it." McMahon v. Federal Insurance Co., D.C.S.D. Ga., 131 F.Supp. 5, 9.

I find that the plaintiff is a Delaware Corporation with its principal office in Batavia, Illinois, where its product is manufactured, its office and site of manufacture being approximately 37 miles from Chicago. Its chief patent counsel has offices in Chicago, and its associate patent counsel has offices in Macon, Georgia. The defendant, Woolworth, is a New York corporation with its principal office in New York City, doing business throughout the country, including Macon, Georgia and Chicago, Illinois, so that for venue purposes it resides both in Macon, Georgia and Chicago, Illinois, and is subject to suit in both places. Its general counsel reside in New York, but if this case is transferred to Chicago it will retain patent counsel there, probably Schneider & Dressler, who are already familiar with this matter and who represent parties defendant in the patent case now pending in Chicago. Woolworth's only connection with this case is as retailer of the alleged infringing product and in its defense of the Macon suit would have to rely upon Associated Products and Kolar Laboratories for evidence. While Woolworth is not named as a defendant in the Chicago case, it is amenable to suit there and has offered to acknowledge service in that proceeding.

Associated Products, Inc. is an Illinois corporation with its principal offices in New York, and is represented in the Chicago case by Chicago patent counsel, Schneider & Dressler. Geographically, Chicago is about as accessible to this Illi-nois corporation, with principal offices in New York, as would be Macon, Georgia; actually, Chicago is more accessible in that its officers now frequently make visits to Chicago, but not to Macon. Associated Products is connected with this case as distributor of the alleged infringing article and is sued as such in the Chicago case. Associated is likewise named as a defendant in the Macon case, but has not been, and cannot be, served here.

Kolar Laboratories, Inc., is an Illinois corporation with its principal place of business in Chicago, and is the manufacturer of the alleged infringing article and is sued as such in the Chicago case. Of course, Chicago is the most convenient site for it to litigate.

5-Day Laboratories, Inc. is another defendant in the Chicago case, but the record is quite silent as to its connection therewith. Presumably, it has an intimate connection when its name is considered in connection with the alleged infringing product, 5-Day Stick Deodorant.

W. Kedzie Teller, the patentee, resides in Riverside, Illinois, a suburb of Chicago, and has his office in Chicago, and, while he would welcome an opportunity to come to Macon, Chicago would obviously serve his convenience better.

Inasmuch as the plaintiff's principal office and the place where its patented article is manufactured is within 35 miles of Chicago, and its chief patent counsel have offices in Chicago, the latter city would have been more convenient initially for it to have conducted this litigation. Nothing has changed that convenience, except its preparation for trial in Georgia, including the selection of associate counsel here, the purchase of the alleged infringing article in Macon, in Atlanta, and in Chattanooga, conferences with a Chemistry Professor at Mercer University and with a Chemist in Atlanta, Georgia. While all of these matters are important, the results of this preparation, if not stipulated, can be made available by depositions or by personal appearance of the witnesses in Chicago more readily than can the defendant's evidence be as-

sembled from Chicago, Milwaukee and New York in Macon.

Not overlooking the fact, as mentioned in the Gulf Oil Corporation case, that litigants generally manage to try their cases with fewer witnesses than they predict in motions like this, and allowing for the fact that the patentee would attend the trial in Macon of his own volition, it is true that one of the principal issues in the defense of this case is the validity of the Teller patent, including the question of whether the subject matter thereof is new and involves patentable invention, that an examination and study of the history of anti-perspirants will be required covering a period of years prior to the filing of this suit and that this study and examination will involve an examination of various research workers, including, but not limited to, George G. Kolar, of Chicago; one or more officers and employees of Kolmar Laboratories, of Milwaukee, Wisconsin, and one or more employees of National Lead Company, of New York City. Compulsory process will be available to defendant with respect to all of the Kolar witnesses from Chicago and in all probability with respect also to the Kolmar witnesses from Milwaukee. Of course, both sides will have expert witnesses and, while the Courts need not be too solicitous of their convenience, they probably reside nearer Chicago than Macon.

It seems to me that clearly this controversy can be more appropriately, conveniently and conclusively settled in the Chicago area than in Georgia. To paraphrase language of the Court of Appeals for the Third Circuit in Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co., 189 F.2d 31, 34:

> " * * * the whole of the war and all the parties to it are in the Chicago theatre and there only can it be fought to a finish as the litigations are now cast. On the other hand if the battle is waged in the Georgia (Delaware) arena there is strong probability that the Chicago suit nonetheless would have to be proceeded with for Associated, Kolar and 5-Day Laboratories, Inc. (Acme is) are not and cannot be made parties (a party) to the Georgia (Delaware) litigation. The Chicago suit when adjudicated will bind all the parties in both cases. Why should there be two litigations where one will suffice? We can find no adequate reason. We assume, of course, that there will be prompt action in the Chicago theatre."

While, as plaintiff sees it, this case will not be complicated nor require as many witnesses as the cases of Clayton v. Swift & Company, supra, affirmed Clayton v. Warlick, 4 Cir., 232 F.2d 699, and Chas. Pfizer & Co., Inc. v. Olin Mathieson Chemical Corp., D.C., 131 F.Supp. 21, affirmed 5 Cir., 225 F.2d 718, and Ex parte Charles Pfizer & Co., 5 Cir., 225 F.2d 720, the principles involved on this motion to transfer are quite the same.

Apparently, the only reason for suing Woolworth separately in Georgia rather than joining it with the other three defendants in the Chicago case filed almost simultaneously was the possibility of bringing the Georgia case to trial earlier than the Illinois case. We appreciate plaintiff's desire for an early trial and sympathize with its counsel's efforts to obtain it. Justice delayed ranks next in the scale of evils to justice denied. The words of Magna Carta are: "To no one will we sell, to no one will we deny or delay right or justice." But, at the same time, Courts cannot look with favor upon forum shopping. Clayton v. Warlick, supra. Evils can follow in its wake.

■ While it is probable that an earlier trial could be had in this district, we here fortunately being almost abreast of our work, that does not mean that rapidity with which trial can be reached is the controlling factor on a motion of this kind or that "the interest of justice" would dictate that one Court should initiate or participate in a race for justice with any other Court. This case would normally be tried in this district during the first half of November of this year, if the case is ready by that time and barring unforeseen develop-

ments. The records show that there is at least a possibility that it will be reached for trial in Chicago in the fall or winter, but more likely some time after the first of the coming year.

The possibility of a speedier trial loses some of its weight as an argument in this type case where there is also the possibility that pre-trial activity devoted to preparation and discovery will consume much time while the case progresses on the calendar. Glasfloss Corp. v. Owens-Corning Fiberglass Corp., D.C.S.D.N.Y., 90 F.Supp. 967, 970. See also Helene Curtis Industries v. Sales Affiliates, D.C. S.D.N.Y., 105 F.Supp. 886, 905, affirmed 2 Cir., 199 F.2d 732.

■ Giving due weight to plaintiff's choice of this forum, the Court is convinced that it is for the convenience of parties and witnesses and in the interest of justice that this case be transferred to the Illinois Court where it can be consolidated with the case there pending, if the Court there so desires, and one trial had instead of two and a judgment obtained which will bind all interested parties rather than only the plaintiff and the retailer. The convenience of the parties will be served by having related actions tried in the same tribunal and at the same time, thus effecting an economy in litigation. Aircraft Marine Products v. Burndy Engineering Co., supra.

Should a trial of the entire case and an adjudication of all issues binding upon all parties come somewhat later in Illinois than the earliest possible date for an adjudication here as between the plaintiff and retailer alone the suit here prays for damages and for such other and further relief as may seem proper to the Court and there is no suggestion in the record that Woolworth is insolvent.

The findings and conclusions herein contained are arrived at without consideration of the allegations of the supplemental complaint and of the evidence relating thereto in accordance with the order of April 23, 1956, that "the filing of the supplemental complaint shall not affect the motion to transfer heretofore filed." Upon further reflection, however,

the Court sees no reason why said allegations and the evidence relating thereto should not be considered and the result would be the same if consideration were so given inasmuch as Odo-Ro-No is made somewhere in the East by the Northam-Warren Corporation, a New York corporation having principal offices in Connecticut, and Stopette is distributed by Jules Montenier, Inc., an Illinois corporation.

An order will be entered transferring this case to the United States District Court for the Northern District of Illinois, Eastern Division and dissolving the order staying all proceedings in this action including the taking of depositions therein, entered March 24, 1956, and the order amending the same, entered April 23, 1956, and the order to be entered herein will order defendant, F. W. Woolworth Company to file its defensive pleadings to the supplemental complaint within ten days from the date said order will be so entered.