The GENERAL TIRE & RUBBER COMPANY, Petitioner,

v.

The Honorable R. Dorsey WATKINS, United States District Judge for the District of Maryland, Respondent.

The Firestone Tire & Rubber Company, Intervenor.

No. 10993.

United States Court of Appeals Fourth Circuit.

Argued Dec. 5, 1966.

Decided Jan. 11, 1967.

Certiorari Denied March 13, 1967. See 87 S.Ct. 1031.

Charles J. Merriam, Chicago, Ill. (Norman P. Ramsey, Baltimore, Md., Frank J. Earnheart, Akron, Ohio, Semmes, Bowen & Semmes, Baltimore, Md., and Merriam Marshall, Shapiro & Klose, Chicago, Ill., on brief), for petitioner.

Edward S. Irons, Washington, D. C., (Benjamin C. Howard, Baltimore, Md., Mary Helen Sears, Gene W. Stockman, Washington, D. C., Stanley M. Clark, Akron, Ohio, Harold J. Birch, Washington, D. C., William W. Beckett, Hyattsville, Md., and Irons, Birch, Swindler & McKie, Washington, D. C., on brief), for intervenor.

Before HAYNSWORTH, Chief Judge, and SOBELOFF, BOREMAN, BRYAN, J. SPENCER BELL, WINTER and CRAVEN, Circuit Judges, sitting en banc.

BY THE COURT:

On April 13, 1961, the petitioner, General Tire and Rubber Company, filed a motion to transfer Civil Action No. 12,-932, Firestone Tire & Rubber Co. v. General Tire & Rubber Co., now pending in the District of Maryland, to the United States District Court for the Northern District of Ohio, Eastern Division. On July 6, 1961, the district court denied the motion without prejudice to renew upon subsequent change of conditions. On September 6, 1963, the motion was renewed, and on October 14th of that year the district court again denied the motion. On January 7, 1964, this court declined to issue a writ of mandamus. On June 25, 1966, General again renewed its motion to transfer the case to the Northern District of Ohio or in the alternative to dismiss the action because of an attempt on the part of the plaintiff Firestone Tire and Rubber Company to practice a fraud against the court. General again seeks a mandamus directing the district court either to transfer the case to the Northern District of Ohio or in the alternative to dismiss.

We are unanimously of the opinion that the case should be transferred to the Northern District of Ohio in order to prevent an extravagantly wasteful and useless duplication of the time and effort of the federal courts by the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues.

Our decision of January 1964[1] declining to issue the writ on the grounds that the record at that time did not disclose that the trial court had abused its discretion was premised upon two principal factors: (1) that McCreary Tire and Rubber Company, the customer of Firestone, was an independent coequal party plaintiff against whom alone a patent suit could not be brought in Ohio for reasons of venue, and (2) the plaintiffs and the court confidently predicted that the Maryland case would be reached and disposed of before trial of its sister cases could be started in Ohio. Three years later we again consider the case upon a renewal of the motion to transfer. McCreary is no longer a party, having changed counsel sometime after the death of Mr. McCreary, Sr., and settled with General Tire on July 18, 1966. In a colloquy engaged in by the remaining parties and the court on the record for the information of this court, the plaintiff Firestone and the court "hoped" that the case might be completed by September of 1967, although apparently further depositions to be taken abroad are contemplated. In a suit on the same patent against the United States Rubber Company in Ohio pretrial has been completed and that case set to commence on March 1, 1967. We are now faced with the fact that not only has the Maryland case failed promptly to settle the issues between the parties but on the contrary both suits will be in the process of trial simultaneously for at least nine months of the coming year involving the same patent and consequently many common issues of fact and law. A brief history of the action is necessary to understand the issues.

On December 13, 1960, General Tire and Rubber Company filed two separate suits against the Goodyear Tire and Rubber Company and the United States Rubber Company upon Patent #2,964,083 in the Northern District of Ohio. These suits were subsequently consolidated. At the same time it wrote Firestone and others offering licenses under the patent.

On March 17, 1961, a meeting was held among counsel for Goodyear, U. S. Rubber and Firestone at which the possibility of a declaratory judgment suit by Firestone was discussed.

On March 30, 1961, a telephone conversation took place between Mr. Irons, counsel for Firestone, and Mr. McCreary, Sr., relating to McCreary's becoming a party plaintiff in the declaratory judgment suit.

On March 30, 1961, the declaratory judgment suit was commenced in Maryland by Firestone Tire and Rubber Com-

---

1. General Tire & Rubber Co. v. Watkins, 4 Cir., 326 F.2d 926.

pany and McCreary Tire and Rubber Company for a declaratory judgment of invalidity and noninfringement of the same patent as that involved in the Ohio suits.

On April 4th and 6th, 1961, General filed suits in Ohio against Firestone and McCreary for infringement of this same patent.

On April 13, 1961, General moved for a transfer of the Maryland suit to Ohio.

On May 9, 1961, a telephone conversation took place between Mr. Birch, counsel for Firestone, and Mr. McCreary, Sr., regarding the billing of McCreary Tire and Rubber for fees and expenses.

On July 6, 1961, the transfer motion of April 13th was heard, and the district court in an oral opinion rendered the same day denied General's motion to transfer without prejudice to renewal upon changed conditions and enjoined General from prosecuting its Ohio cases against the Maryland plaintiffs.

In October 1961 McCreary, Sr., filed answers to interrogatories of General in which he denied that he had any agreement with Firestone concerning the prosecution of this suit, and in August of 1962 Mr. Clark, house patent counsel for Firestone, deposed to the same effect.

On September 6, 1963, General renewed its motion to transfer the case to Ohio, and on October 14, 1963, the court denied this second motion. In its opinion the court said:

"Further the court is completely unconvinced that a transfer would really conserve judicial manpower. Plaintiffs have consistently stated that if a transfer were made, they would oppose consolidation; they have for the most part, refused to agree that discovery proceedings in the Cleveland cases may be used in this case; and it appears that this case, set firmly for trial on January 7, 1964, in this court will be reached, and (hopefully) will be decided before the Cleveland cases, which

may be set for trial in April 1964, if the parties are then ready for trial."

On November 5, 1963, General filed a petition for mandamus to compel the transfer, which this court denied. See note 1 supra.

On April 15, 1964, the Maryland case began trial on a four day per week schedule.

In October 1965, there was disclosed to General a memorandum in the handwriting of Mr. Irons, counsel for Firestone, concerning the meeting on March 17, 1961, with counsel for Goodyear and U. S. Rubber.

On April 18, 1966, there was disclosed to the court and counsel for both sides a transcript of the telephone conversation between Mr. McCreary and Mr. Birch which took place on May 9, 1961. The transcript was found in Mr. McCreary, Sr.'s desk after his death by Mr. Blenko, who had replaced Mr. Irons as counsel for McCreary Tire and Rubber Company.

On June 28, 1966, General again renewed its motion to transfer or in the alternative to dismiss the suit.

On September 26, 1966, the renewed motion was denied, and General again seeks from us a writ of mandamus.

■ Preliminary to the question of whether or not we should issue the requested writ is the question of whether or not we have jurisdiction to entertain the petition under 28 U.S.C. § 1651(a).[2] We think La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1956), has clearly settled the question of this court's jurisdiction to entertain a petition under the All Writs Statute and to issue the writ under extraordinary circumstances. In *La Buy* the circuit court had issued the writ compelling the trial court to revoke orders of reference to masters in certain antitrust cases. The respondent insisted that the circuit court had no jurisdiction to entertain the petitions because the references would

2. 28 U.S.C. § 1651(a): "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

not prevent the appellate court from ultimately reviewing its action on appeal. The Court rejected this argument, saying that the question of the naked power to entertain the writ had long since been settled by the Supreme Court, and adding: "Since the Court of Appeals could at some stage of the antitrust proceeding entertain appeals in these cases, it has the power in proper circumstances, as here, to issue writs of mandamus reaching them." While this court has been extremely reluctant to exercise its authority,[3] we have not held that the court lacked jurisdiction to entertain the petition, and in United States & Wirtz v. Hemphill, 369 F.2d 539 (4 Cir. 1966), the writ was issued in a case in which the action of the district court would have ultimately come before this court for review but we felt the issuance of the writ to be the only practical or adequate remedy for an abuse of discretion.[4]

In addition to the usual forum non conveniens arguments which it had offered in support of its motion to transfer General also contends bad faith and fraud on the part of the plaintiffs would justify either transfer or dismissal. It first contends that the Maryland suit was brought by Firestone at the behest of counsel for Goodyear and U. S. Rubber in order to divide the resources and energies of General between Ohio and Maryland and not as a bona fide effort to obtain an expeditious determination in a convenient forum of the rights of the nominal plaintiffs. In support of this contention it offers the memoranda which Mr. Irons, counsel for Firestone, and Mr. Fowler, attorney for Goodyear, made at the New York meeting.[5] It also

---

3. Cf. General Tire & Rubber Co. v. Watkins, 363 F.2d 87 (4 Cir. 1966); General Tire & Rubber Co. v. Watkins, 331 F.2d 192 (4 Cir. 1964); General Tire & Rubber Co. v. Watkins, 326 F.2d 926 (4 Cir. 1964); Morehead v. Barksdale, 263 F.2d 117 (4 Cir. 1959); Clayton v. Warlick, 232 F.2d 699 (4 Cir. 1956); Clinton Foods, Inc. v. United States, 188 F.2d 289 (4 Cir. 1951).

4. See also Schwab v. Coleman, 145 F.2d 672, 156 A.L.R. 355 (4 Cir. 1944) (indefinite continuance by district court).

5. "DEFENDANT'S EXHIBIT 1840

"Mr. Iron's Memorandum of March 17, 1961 Meeting Between Counsel For U. S. Rubber, Firestone and Goodyear.

(Original in longhand)

| | |
|---|---|
| Mr. Fowler | Cahill, Gordon, Reindel and Ohl |
| Mr. Correa | March 17, 1961 |
| Mr. Kenyon | 10:30 A.M. |
| Mr. Mandelbaum | |
| Mr. Clark | |
| Mr. Irons | |

Mr. Kenyon—Want to start backfire and keep it burning—Where How. If A sues in its name Firestone sued in Cleveland. If Firestone joins w/Armstrong as Plaintiff.—Transfer more probable.

Mr. Correa: Fair chance would happen.

Mr. Kenyon: Problems are
    (1) Make case stick
    (2) Judge
    (3) Cf. 2 Cir.
    Discussion of 2 Cir panel
    Depends on Panel.

Mr. Clark: Desire to file limited to E.S.I. and S.M.C. at least.

2–3–8

Gates (10).    California (9).
While considering, keep mum in re clients *per se*.

Mr. Correa/Mr. Fowler: Good case for Transfer
    Query—Check transfer law in 3 Cir. Dist. in Wilmington—Pitt District.

points to the admitted fact that counsel for Goodyear and U. S. Rubber billed their clients for this meeting, although Mr. Clark claims the meeting was called at his behest and for the benefit of Firestone and that counsel for Goodyear and U. S. Rubber were committed not to disclose to their respective clients what was said at the meeting. Secondly, General contends that bad faith was present in the insistence of Firestone and McCreary that McCreary was a wholly independent coequal plaintiff who was free to participate in the action without reference to Firestone's interests. In support of this contention it offers a transcript of a three way telephone conversation [6] which took place on March 30,

Proposed approach to Attorney General to reverse position of Justice Department in respect to whether General Tire patent is within General Tire research contract.
Congress is in Washington.
Mr. Correa favors prompt conference with Justice Department, cf. timing in relation to proposed Firestone Case.
Mr. Correa
Summary—one appeals to Correa is suit on license alone in D.C.  Mr. Kenyon concurs.

---

"DEFENDANT'S EXHIBIT 1826

"[Memorandum of March 17, 1961 meeting between U.S. Rubber, Goodyear, and Firestone.  The original of this document is in the handwriting of Mr. Fowler, attorney for Goodyear.]

---

General v. Goodyear

Stan Clark, Irons—
Kenyon, Mandelbaum—
Correa, JAF

Friday, March 17th

1. Armstrong          Makes OER & buys it from Firestone—
2. General has given Armstrong notice & offered license—General has sent licenses to 16 or 19 tire companies—So the controversy exists—
3. Armstrong would not sue—Firestone must finance it & be in control—
4. What's the chance of the suit being transferred to Cleveland—
5. 2d (illegible) & 8th Circuits are possibilities—

---

Mat's suggestion:
1. Firestone file suit in District of Columbia for declaratory judgment on license —No diversity, no Fed. question.
2. General will have to file compulsory counterclaim for patent infringement—
3. Recent decision of Sup Court says suit cannot be transferred under § 1404(a) to a District Court where it could not originally have been brought—
The original complaint could not have been filed in Fed. Court in Ohio—
It is filed in Dist. Court in D.C. as the "municipal" Court—
4. Forum non conveniens—"

---

6. "DEFENDANT'S EXHIBIT 1836
"[Transcript Made in Mr. Irons' Office of Telephone Conversation with Mr. Harry C. McCreary, Sr.,] 3/30/61
Irons  Mr. McCreary, this is Mr. Irons, Hal Birch's partner, down in Washington.  Stanley Clark from Firestone is on the other line.
Clark  How are you this morning?
Irons  We are about to reach a decision about what to do about General and what we would like to do, Mr. Mc-

1961, between McCreary, Sr., then President of McCreary; Mr. Clark, house patent counsel for Firestone; and Mr. Irons, counsel for both plaintiffs in this case until sometime after Mr. McCreary, Sr.'s death, and particularly the transcript of a telephone conversation between Mr. McCreary, Sr. and Mr. Harold Birch, a partner to Mr. Irons, which took place on May 9, 1961.[7]

Creary, is file suit in Baltimore using Firestone and McCreary jointly as plaintiffs to attack the General patent and to assert the rights under the government contract with Firestone as nominee. Mr. Beckett talked to you about this. I understand from him that this has been discussed with you and that you have no objection to it. Is that correct?

McCreary That's correct.

Irons Mr. McCreary, the thinking in this direction is that as far as the cost of the litigation is concerned with this office that you would be billed for it, but suppose there is a decision which is adverse. I don't know whether Mr. Beckett covered this with you or not but to the extent that you purchased your oil extended rubber from Firestone, of course Firestone would have to pay on that anyway, but you are not looking for Firestone to hold you harmless in that event with respect to rubber you purchased from them.

Clark I don't think you would go that far. We, of course, are going to fight this thing one way or the other. These people are asking 4¢ a tire; they are asking a little more than that on camelback. It amounts up to the total demand on the whole industry of about $6,000,000.00. You can figure out yourself what the 4¢ a tire will mean to your company. It may not mean as much to you as it does to Firestone.

McCreary I don't know about that. Firestone has lower costs than we have. I try not to worry about that.

Irons All I am saying is this. General has been going after the tire makers, not the rubber manufacturers and so far the rubber manufacturers have not and probably will not extend any immunity with respect to oil extended rubber with this sale to customers. Each tire company has to go ahead and take his own risk with respect to his patent. You run some risks in going into this suit. If we lose, you lose with us. You understand that?

McCreary Certainly. Certainly. If you fight without us and you lose, then I lose.

Clark If we sit back and don't do anything, we have lost just as surely as we sit here.

McCreary I would be glad to join with you and also do anything here I can.

Clark Wonderful. If we win, both of us are in free.

McCreary Well that I appreciate and I will try to show my appreciation by being just as active in this thing as I think you want us to be.

Irons We don't make many demands on you but there were to be—

McCreary We'll take care of our own travel bills and stuff like that.

Irons Hal Birch sends his regards to you Mr. McCreary.

McCreary Thank you and send mine to him. You will probably want some signatures.

Irons We may on some affidavits and any papers that will be of interest to you.

McCreary Keep us posted and we'll be guided by your office 100%."

7. The following is a transcript of the pertinent part of the telephone conversation:
"Voice No. 1: Hello, hello.
Voice No. 2: Hello, hello, sir.
Voice No. 1: Hello.
Voice No. 2: Can you hear me?
Voice No. 1: Yes.
Voice No. 2: Just a moment for Mr. Birch in Washington.
Voice No. 1: Right.
Voice No. 3: Hello.
Voice No. 1: Hello.
Voice No. 3: Hal Birch, Mr. McCreary.
Voice No. 1: Yes.
Voice No. 3: How are you up in Indiana?
Voice No. 1: First class.
Voice No. 3: Why, we've been going around and around and around with General, as you know, and we've got a little bit of a problem. There is a bit of a schism in their approach to McCreary as against Firestone, and we think they're probably trying to line up to say in the long run that McCreary can be transferred out because they are just Firestone's little patsy, and Firestone is paying the whole bill.
Now, here is what we'd like to do, if it's all right with you, with full recognition that the agreement that was made

In short General contends that the memorandum of Mr. Irons on the March 17, 1961, meeting discloses that Firestone was asked to start a "backfire" by U. S. Rubber for the purpose of delaying and disrupting the Ohio litigation; that this case was brought 5 days after such request; that the parties recognized the possibility of a transfer to Ohio, and to prevent it McCreary was brought in as a co-plaintiff and represented to be an independent party while in fact there was a secret agreement that Firestone through joint counsel would completely dominate and control this case.

In a long and meticulous memorandum opinion filed by the court on October 17, 1966, the court reviewed the evidence concerning General's charges and found with Firestone on all points. It found that the New York conference was held at the request of Firestone's counsel; that Firestone did not start the Maryland suit as a "backfire"; that McCreary was not decided cn as a party plaintiff until the day the complaint was filed, and that it was completely independent and chose the forum for its own convenience and because of its commercial activity in Baltimore. It further found that McCreary's agreement to pay one per cent of the expenses and attorneys' fees was a bona fide agreement and the only agreement between the plaintiffs with respect to the lawsuit, and that there was no agreement that Firestone would ultimately repay McCreary. The court thereupon denied the motion to transfer on the grounds that there was no attempt to practice fraud on the court and that in any event the court was not deceived

between you and Stanley Clark is not going to, in the long run, change one tiny little bit. I don't want to put anything in the mail, and I don't want to talk about it too much, for obvious reasons.

Voice No. 1: Right.

Voice No. 3: What we would like to do is this: The relative production as between you and Firestone is about 99 to 1.

Voice No. 1: That sounds about right.

Voice No. 3: In other words, you are 1 per cent of their total business, tire business.

Voice No. 1: Right.

Voice No. 3: So what we would like to do would be to formally bill you folks for 1 per cent of the cost of this litigation, which this last month, would add up to the tremendous figure of $34.86.

Voice No. 1: I believe we could stand that.

Voice No. 3: If you could stand that—

Voice No. 1: I think s—

Voice No. 3: Well, that's about what it'll be monthly, and then if you could send us that amount of money just as if we were—

Voice No. 1: Right.

Voice No. 3:—Firestone didn't even exist.

Voice No. 1: Right.

Voice No. 3: Bearing in mind that—

Voice No. 1: Right.

Voice No. 3: —after this is all over with, why, everything will come out in the wash.

Voice No. 1: That's right.

Voice No. 3: Okay?

Voice No. 1: That's perfectly all right.

Voice No. 3: All right. Well, we didn't think you would have any serious—

Voice No. 1: Not at all, and I certainly don't want them to be able to split this thing apart.

Voice No. 3: Well, that is right, because what they have now done, I don't know whether Ed has talked to you about this recently, but what they have now done is move in Ohio to enjoin Firestone from proceeding in the Maryland lawsuit. Well, of course, we have already moved in Maryland to enjoin them from proceeding against Firestone in any other court.

Voice No. 1: Uh hum.

Voice No. 3: So this is—ah—in two courts now, and real interesting, but they did not move to enjoin McCreary.

Voice No. 1: Uh huh.

Voice No. 3: See?

Voice No. 1: Uh huh.

Voice No. 3: So we don't want to leave any stone unturned in case they should file an interrogatory and ask McCreary if they are paying their toll in this lawsuit.

Voice No. 1: I certainly—

Voice No. 3: Whatsoever.

Voice No. 1: I certainly want to be able to prove it.

Voice No. 3: Right. So what we want to do is to send you—and we'll send you a bill for both March and April.

Voice No. 1: Fair enough.

Voice No. 3: The March bill will be even smaller than the $34.00.

Voice No. 1: Well, that's quite all right.

Voice No. 3: (Laughter) Okay."

about McCreary's relationship to its co-plaintiff.

We do not feel it advisable at this stage in the lawsuit to pass on the district court's findings and conclusions with respect to General's contentions of bad faith and misrepresentation to the court. Without denigrating the importance of these issues in the ultimate assessment of costs between the parties, we think that their resolution in favor of Firestone should not have been determinative of the motion to transfer. Indeed we think the court's preoccupation therewith caused it to overlook completely the factor which should have controlled the decision. That factor was the complete change of conditions which had taken place since the motion was originally denied. This failure resulted in an order which constituted an abuse of discretion.[8]

That conditions had changed is evident upon examination of the reason set forth in the judge's memorandum opinion filed on October 14, 1963, denying both the original motion and its renewal, i. e., that the Maryland case would be reached and tried before the Ohio case could be started. Furthermore, although the court concluded on October 14, 1963, and again on September 24, 1966, that its original denial of the transfer motion was not influenced by McCreary's presence as a party plaintiff, we think the subsequent settlement with McCreary on July 18, 1966, further strengthens the case for transfer at this time.

We turn now to our reasons for issuing the writ under the extraordinary circumstances of this case. We think the district court erred in its failure to weigh the impelling need for efficiency in the administration of our court system against the right of Firestone to continue the trial in a forum which no longer offered to it any convenience over the Ohio forum. Certainly the simultaneous trial of two suits in different circuits involving a number of identical questions of fact and law would result in a useless waste of judicial time and energy. Against the judicial time and effort already spent on the Maryland case must be weighed the fact that the Ohio judge either has been, or will have to be, "educated" in much of the same factual background whether or not the Ohio case against Firestone can be consolidated with its companion case against U. S. Rubber.

The United States Supreme Court considered the question of multiple litigation in the federal courts in Kerotest Mfg. Co. v. C-O-Two Co., 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952). In that case C-O-Two, owner of two patents, brought an infringement action in Illinois against a customer of Kerotest, manufacturer of the allegedly infringing item. Kerotest subsequently brought a declaratory judgment action on the same patents in Delaware. Later Kerotest was joined as a party defendant in the Illinois action. The Delaware district court stayed the Illinois suit as against Kerotest on the ground that the Delaware action had commenced before Kerotest became a party to the Illinois suit. The Third Circuit reversed, ordering the district court to stay its proceedings in the case until 10 days after final determination of the Illinois litigation. The Third Circuit refused to rest its decision upon so artificial a test as the chronology of the suits, but rather considered the test to be "whether the relief sought can be 'more expeditiously and effectively afforded [in the other suit] than in the declaratory proceeding'." The Supreme Court, in affirming the Third Circuit, said:

"The Federal Declaratory Judgments Act, facilitating as it does the initiation of litigation by different parties to many-sided transactions, has created complicated problems for coordinate courts. Wise judicial administration, giving regard to conservation

<hr>

8. For an interesting discussion of the criteria which should determine the exercise of discretion to issue the extraordinary writ see: Mandamus Proceedings in the Federal Courts of Appeals: A Compromise With Finality, 52 Calif.L.R. 1036.

of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." 342 U.S. at 184, 72 S.Ct. at 221.

The Court also noted that "[t]he manufacturer who is charged with infringing a patent cannot stretch the Federal Declaratory Judgments Act to give him a paramount right to choose the forum for trying out questions of infringement and validity." Id. at 185, 72 S.Ct. at 222.

The Second Circuit, in Hammett v. Warner Bros. Pictures, Inc., 176 F.2d 145 (2 Cir. 1949), stressed the expediency of avoiding multiple trials involving common issues. In that case, the issue was who owned rights to the character "Sam Spade," with Warner Bros. claiming rights under its copyright on *The Maltese Falcon,* and Hammett, the original creator of the character, claiming Warner's copyright covered only that book and not the character as it may appear in other books and stories. Warner Bros. commenced a suit in California, while Hammett brought a declaratory judgment action in New York. The Second Circuit affirmed the district court's dismissal of the New York action on grounds that all issues would be resolved in California. See also Alamance Industries, Inc. v. Filene's, 291 F.2d 142 (1 Cir. 1961).

Our situation is factually different from both *Kerotest* and *Hammett* because the suit which is set to be tried in Ohio in March is against U. S. Rubber and not Firestone. Presumably General's Ohio suit against Firestone was not consolidated with the suits against Goodyear and U. S. Rubber because the Maryland district court had enjoined General from prosecuting its Ohio suit. This difference necessitates our invoking a different remedy, but the principle to be applied is the same: maintenance of judicial economy. The prompt transfer of

the Maryland suit to Ohio will make it available there for consolidation and trial in March with the suit against U. S. Rubber. In view of the complex and time consuming nature of patent cases, the advisability of consolidation is obvious. See Pharma-Craft Corp. v. F. W. Woolworth Co., 144 F.Supp. 298 (M.D.Ga. 1956). The district court, in its denial of General's second transfer motion, pointed out that Firestone had expressed a determination to fight consolidation if the case were transferred. While we suspect that Firestone might have a change of heart after transfer, in any event, its opposition would not be determinative of the issue. See American Photocopy Equip. Co. v. The Fair, 35 F.R.D. 236 (N.D.Ill.1963). This record discloses no reason why consolidation should not be as feasible here as in the two other cases.

Since General's Ohio case against U. S. Rubber cannot be moved to Maryland and consolidated for trial with the pending declaratory judgment suit, we think the district court abused its discretion in not transferring the Maryland case to Ohio where it will be available for consolidation—the only way in which time and effort can now be saved. The traditional forum non conveniens argument is no longer available. Both parties are Ohio corporations with their main offices in that state. It is the center of rubber manufacture in the United States, and many if not most of the documents and witnesses are there. Firestone has made no serious argument to the contrary. The evidence indicates a high degree of forum shopping which we recognize as an inevitable adjunct to the congressional policy on declaratory judgment suits in patent litigation, but forum shopping must not be indulged in the face of multiple litigation especially where, as here, the shopper is offered an equally convenient forum. See Caldwell Mfg. Co. v. Unique Balance Co., 18 F.R.D. 258 (S.D.N.Y.1955).

We are aware of the distinction made by some courts of appeal between entertaining a writ of mandamus from an order of a district court denying transfer

under 28 U.S.C. § 1404(a) and entertaining a writ when the district court granted transfer. E. g., In re Josephson, 218 F.2d 174 (1 Cir. 1954). See La Buy v. Howes Leather Co., 352 U.S. 249, 260, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957) (Justice Brennan dissenting). The reasoning is that extraordinary writs authorized under 28 U.S.C. § 1651 are to be issued only in aid of appellate jurisdiction, and since denying transfer does not deprive the appellate court of ultimate jurisdiction to hear the issue on appeal, issuance of the writ in such a situation is not properly in aid of the court's jurisdiction. On the other hand, if the district court transfers the case out of the circuit, the court of appeals is being deprived of its ultimate jurisdiction to review and, therefore, mandamus is deemed justifiable.

 While the rationale of In re *Josephson* has merit where the issue before the court is whether the district court has abused its discretion in circumvention of the rights of the parties, we find it inappropriate in our situation. We are not concerned here only with the rights of private litigants which we feel in any event will not be impaired in the least by transfer.[9] Nor are we concerned only with the problem of whether or not we shall ultimately lose our jurisdiction to review to another appellate court. Rather, our interest is with effective administration and supervision of the courts of our circuit. It is obvious that if we postpone action until appeal after final judgment, the question will have become moot and the damage done. We do not believe that the rule developed in those cases was intended to prevent our acting in this extraordinary situation.

We are not here permitting use of mandamus as a substitute for interlocutory appeal, which is, with a few statutory exceptions, prohibited in the federal courts. See 28 U.S.C. §§ 1291–92. Rather, we are using the writ for a purpose for which we think it was intended—to correct a wrong to the court which otherwise can never be effectively presented on appeal. The order of the district court is reversed; the writ will be issued.

An appropriate order will be entered.

---

9. We agree with the statement of Judge Learned Hand in Magnetic Engineering & Mfg. Co. v. Dings Mfg. Co., 178 F.2d 866, 869 (2 Cir. 1950): "We do not believe that our power to protect our own jurisdiction extends to protecting it as against the jurisdiction of another federal court of equal jurisdiction, or that a suitor has any legally protected interest in having his action tried in any particular federal court, except insofar as the transfer may handicap his presentation of the case, or add to the costs of trial."